**CLEVELAND DEMOLITION COMPANY, INC., Plaintiff-Appellant,**

v.

**AZCON SCRAP CORPORATION, a DIVISION OF GOLD FIELDS AMERICAN INDUSTRIES, INC., Defendant-Appellee,**

**and**

**Richard Spine; Lawrence A. Demase, Defendant (Two Cases).**

**Nos. 86–1141(L), 86–1266.**

United States Court of Appeals, Fourth Circuit.

Argued April 9, 1987.

Decided Sept. 4, 1987.

Amy S. Berman, Washington, D.C., (Leonard W. Yelsky; Angelo F. Lonardo; Yelsky & Lonardo Co., L.P.A., Cleveland, Ohio, on brief), for plaintiff-appellant.

David G. Fiske (John P. Corrado; Peter A. Kraus; Thomas & Fiske, P.C., Alexandria, Va., on brief), Joel Jay Sprayregen (Clifford E. Yuknis; Shefsky, Saitlin & Froelich, Ltd., Chicago, Ill., on brief), for defendant-appellee.

Before HALL, SPROUSE and WILKINSON, Circuit Judges.

WILKINSON, Circuit Judge:

In this independent action in equity under Fed.R.Civ.P. 60(b), Cleveland Demolition seeks to set aside an earlier jury verdict for Azcon Scrap on the basis that Azcon's trial attorney conspired with a wit-

ness to present perjured testimony. The only evidence of this alleged conspiracy, however, is an evidentiary conflict between the witness's testimony and statements made by a different party in a subsequent lawsuit. This routine evidentiary conflict does not justify an action for fraud on the court or the serious allegations of attorney misconduct leveled in this case. We therefore affirm the district court's decision to grant summary judgment for Azcon and to impose Rule 11 sanctions on Cleveland and its attorneys.

## I.

In 1983, Cleveland Demolition demolished a power plant for an electric company in West Virginia, leaving Cleveland with several tons of scrap material. In June 1983, Paul Haddad, who represented himself as the president of Cleveland, contacted Richard Spine, a vice-president of Azcon Scrap, to inquire whether Azcon was interested in buying the scrap. After inspecting the site and negotiating over terms, Spine and Haddad signed a contract on July 14th. When an Azcon crew arrived at the demolition site, however, it was prevented from removing the scrap by Cleveland employees, who informed them that Haddad was not the president of Cleveland and had no authority to sign the contract with Azcon. Azcon sued Cleveland for breach of contract.

A crucial issue at trial was whether Haddad had apparent authority to sell the scrap for Cleveland Demolition. Azcon presented a great deal of evidence to justify its belief that Haddad was the president of Cleveland. For example, Cleveland employees at the scrap site had treated Haddad as if he were the president and a representative of the electric company had told Spine that Haddad was the president of Cleveland. Haddad also testified that Phillip Schwab, the owner of Cleveland, had asked him to act as president in dealing with the West Virginia electric company because a different Schwab company had defaulted on an earlier contract with the same power company.

During the trial, Spine testified that on July 5th, before signing the contract with Haddad, he requested a verbal Dun & Bradstreet report on Cleveland Demolition from Azcon's Chicago office. According to Spine, Azcon's Chicago office reported that Haddad was listed as the president of Cleveland Demolition. After learning that Haddad was not the actual president, Azcon requested a print-out of the Dun & Bradstreet report. This report, dated August 2nd and introduced at trial, indicated that Haddad was the president of Cleveland. Based on this evidence, the jury returned a $500,000 verdict for Azcon. This court affirmed in an unpublished opinion, concluding that "sufficient evidence exists to support the jury's finding that Paul Haddad was acting as an agent of [Cleveland Demolition]." *Azcon Scrap Corp. v. Cleveland Demolition Co.*, 758 F.2d 645 (4th Cir.1985).

Cleveland now claims that the earlier verdict should be vacated because Spine deliberately lied when he testified that he requested a Dun & Bradstreet report on July 5th. To support this charge of perjury, Cleveland claims that Spine's pretrial deposition, in contrast to his specific trial testimony, was ambiguous and did not clearly reveal that he requested a July report. Moreover, Cleveland notes that Dun & Bradstreet has no internal record of a request by Azcon for information on July 5th. Cleveland concludes that Spine lied about the July request to help Azcon's case.

Cleveland does not stop at alleging perjury by Spine. It claims that Azcon's trial attorney, Lawrence Demase, conspired with Spine to present this perjured testimony. In an attempt to prove Demase's involvement, Cleveland notes that he prepared two affidavits for Spine, but neither affidavit mentioned a July 5th request for a Dun & Bradstreet report. Nonetheless, Demase questioned Spine about the July 5th report at the trial and used this testimony in his opening and closing statements. Cleveland cites as further evidence of Demase's participation his acknowledgement that he and Spine reviewed Spine's deposition statements and concluded that they did not completely reflect what Spine had intended to say. Finally, Cleveland claims that Demase should have known

that Spine did not request a report on July 5th because Dun & Bradstreet has no record of this request.

In sum, Cleveland believes that Spine must have perjured himself because his deposition is unclear and his trial testimony conflicts with Dun & Bradstreet's records. Cleveland concludes that Demase must have actively participated in this perjury because he was Azcon's trial attorney. Relying on such conclusory allegations, Cleveland brought this independent action to set aside the earlier verdict, claiming that it was obtained by a fraud on the court. The district court granted Azcon's motion for summary judgment, finding that there was "no evidence here that either Spine gave false testimony or that Demase participated." The district court noted that Cleveland had produced no "smoking gun", nor even so much as a "singed paperclip." Because Cleveland's attorneys did not adequately investigate the factual or legal basis for this lawsuit, the district court also assessed attorney fees and costs under Rule 11.

## II.

■ A verdict may be set aside for fraud on the court if an attorney and a witness have conspired to present perjured testimony. The only evidence that Spine committed perjury, however, is the conflict between his trial testimony and Dun & Bradstreet's version of the July 5th report; the only evidence of Demase's involvement is that he was Azcon's trial attorney. This meager evidence falls woefully short of proving a fraud on the court. More importantly, if a losing party could attack a verdict whenever two witnesses disagreed and an attorney was involved, no verdict would be final. The district court properly granted summary judgment for Azcon.

As Rule 60(b) recognizes, district courts may entertain an independent action in equity to set aside a judgment for fraud on the court. Fraud on the court is a serious allegation, however, involving "corruption of the judicial process itself." *In re Whitney-Forbes*, 770 F.2d 692, 698 (7th Cir. 1985). A verdict will be vacated only in the "most egregious cases ... in which the integrity of the court and its ability to

function impartially is directly impinged." *Great Coastal Express, Inc. v. International Brotherhood of Teamsters*, 675 F.2d 1349, 1356 (4th Cir.1982). Although perjury by a witness will not suffice, the "involvement of an attorney, as an officer of the court, in a scheme to suborn perjury should certainly be considered fraud on the court." *Great Coastal Express*, 675 F.2d at 1357; *H.K. Porter Co., Inc. v. Goodyear Tire & Rubber Co.*, 536 F.2d 1115, 1118–19 (6th Cir.1976). Thus, if Spine deliberately lied and Demase participated in the fraud, the earlier verdict for Azcon should be set aside.

According to Cleveland, Spine must have committed perjury because his deposition is vague and Dun & Bradstreet has no record of a July 5th request. Cleveland, however, overestimates the ambiguity of the deposition. Although not a model of clarity, Spine's deposition does state that he requested a verbal Dun & Bradstreet report when the Azcon employees inspected the demolition site, which was in late June or early July. The deposition also shows that Spine claimed that Azcon's Chicago office reported that Haddad was listed as the president on the Dun & Bradstreet report. The deposition is not inconsistent with Spine's subsequent testimony; the trial testimony is simply more specific.

The lack of a Dun & Bradstreet record also fails to show that Spine committed perjury. Cleveland did not learn that there was no record until it sued Dun & Bradstreet for negligently informing Azcon that Haddad was the president. Thus, the statements by Dun & Bradstreet employees that they have no internal record actually amount to nothing more than unverified, exculpatory claims by an interested party. This evidence does not show that Spine never requested a report from the Chicago office or that Spine deliberately lied on the stand. It simply shows that Spine and Dun & Bradstreet disagree over whether Azcon made a request on July 5th. Although Cleveland could certainly have used this evidence to impeach Spine during the initial trial, it cannot use this routine evidentiary conflict to support an action for fraud on the court.

Cleveland has produced even less evidence of Demase's involvement in this alleged conspiracy. Demase acted only as Azcon's trial attorney, performing such typical activities as preparing affidavits and questioning witnesses. Cleveland apparently argues for a virtually automatic rule that, whenever a witness lies on the stand, his attorney must have known about and actively participated in the perjury. In addition to being unjustified, this rule would allow parties to circumvent the Rule 60(b)(3) one-year time limitation on motions to set aside a judgment for fraud or misrepresentation. Losing parties could transform a perjury case into an action for fraud on the court simply by alleging that an attorney was present.

In essence, Cleveland asks this court to vacate the earlier verdict because Spine's testimony conflicts with the Dun & Bradstreet statements and Demase participated in the trial. Not only does this argument fail to establish any evidence of a fraud on the court, but it seriously undermines the principle of finality. If a routine evidentiary dispute, which occurs in virtually all trials, could justify an action for fraud on the court, then any losing party could bring an independent action to set aside the verdict, forcing extended proceedings in almost every case. Because Rule 60(b) imposes no time limit on these independent actions, they could be brought at any time. Thus, under Cleveland's version of the doctrine, no verdict would ever be final until a second proceeding was held to determine if there was a fraud on the court.

Rather than unravel the finality of judgments through the abuse of Rule 60(b), we adhere to the well-established rule that evidentiary conflicts must be resolved during the initial trial. Cleveland should have been aware of the conflict between Spine's testimony and Dun & Bradstreet's records; Spine's deposition was specific enough to put Cleveland on notice. Having failed to depose Dun & Bradstreet in time for the trial, Cleveland cannot avoid the verdict by leveling a charge of fraud on the court. Because Cleveland has produced no evidence of a conspiracy between Spine and Demase, Azcon was entitled to summary judgment.

## III.

After granting summary judgment, the district court imposed Rule 11 sanctions on Cleveland and its attorneys for filing this action. A decision to impose sanctions will be reversed only for an abuse of discretion. *Stevens v. Lawyers Mutual Liability Insurance Co.*, 789 F.2d 1056, 1060 (4th Cir.1986); *Cohen v. Virginia Electric & Power Co.*, 788 F.2d 247, 248 (4th Cir. 1986). Because Cleveland did not conduct a reasonable investigation of the factual and legal basis for this claim, we think the district court acted well within its discretion in imposing sanctions.

When an attorney signs a complaint, he certifies that "to the best of his knowledge, information, and belief formed after reasonable inquiry, [the complaint] is well grounded in fact and is warranted by existing law." Fed.R.Civ.P. 11. Under this rule, Cleveland's attorneys were required to investigate the factual and legal basis for the claim before filing this lawsuit. The 1972 amendments underscored this duty by eliminating the subjective "good faith" harbor and requiring an attorney to conduct an objectively reasonable investigation. *Stevens*, 789 F.2d at 1060; *Zaldivar v. Los Angeles*, 780 F.2d 823, 831 (9th Cir.1986). If an attorney signs a complaint without undertaking the necessary investigation, Rule 11 provides that the district court "shall" impose sanctions.

The district court found that Cleveland did not conduct a reasonable factual or legal investigation. We agree. Although Cleveland discovered a conflict between the Spine and Dun & Bradstreet versions, this discovery should have been only the beginning of the inquiry into whether Spine committed perjury. Rather than continuing its investigation, however, Cleveland was apparently satisfied with a few interviews with a Dun & Bradstreet employee.

A complaint of this nature has a potentially devastating impact upon professional reputations. Even if Cleveland had found evidence of perjury, it had an obligation to investigate whether attorney Demase was involved. Cleveland's inquiry never produced any evidence that Demase participated in Spine's alleged perjury. As the

district court noted, "this part of [Cleveland's] case has always been nothing more than speculative and conclusory." Instead of conducting a reasonable factual investigation, Cleveland apparently chose to build its case on the unsupported assumption that Spine must have been lying and that Demase must have been participating. This speculative basis for a Rule 60(b) action alleging attorney misconduct of the most serious nature does not satisfy Rule 11 standards.

Cleveland also failed to conduct a reasonable legal investigation to determine if the complaint was "warranted by existing law." Cleveland limited its inquiry to a brief reading of Rule 60, a portion of American Jurisprudence, a Federal Procedure Guide, and *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 332 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250 (1944). If Cleveland had conducted even a minimal investigation into Fourth Circuit precedent, it would have discovered *Great Coastal Express v. International Brotherhood of Teamsters*, 675 F.2d 1349 (4th Cir.1982). Although *Great Coastal* suggests that a conspiracy by a witness and an attorney to commit perjury will amount to a fraud on the court, the case specifically notes that other sanctions exist to punish perjury and that "perjury or fabricated evidence are not grounds for relief as a fraud on the court." 675 F.2d at 1357. Thus, even if Cleveland had evidence of perjury by Spine, it was still required to show that Demase participated. Because Cleveland had absolutely no evidence of involvement by Demase, a quick reading of *Great Coastal* would have revealed that Cleveland's complaint had "absolutely no chance of success under the existing precedent." *Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir.1985).

In sum, Rule 11 "explicitly and unambiguously imposes an affirmative duty on each attorney to conduct a reasonable inquiry into the validity of a pleading before it is signed." *Eastway*, 762 F.2d at 253. The Rule does not seek to stifle the exuberant spirit of skilled advocacy or to require that a claim be proven before a complaint can be filed. The Rule attempts to discourage the needless filing of groundless lawsuits.

To fulfill his duty, an attorney must investigate the facts, examine the law, and then decide whether the complaint is justified. Cleveland failed to discharge this duty; it conducted only a minimal factual inquiry and a cursory legal investigation. The district court properly imposed sanctions.

In determining the specific amount of the sanctions, the district court reduced Azcon's legal fees by 10%, finding that the case was slightly over-lawyered and did not require a trial. The hourly fees of several attorneys were lowered to reflect the prevailing local rate, while the fees of attorneys from out of state were reduced by 10% because they failed to provide the district court with sufficient information about their professional backgrounds. These adjustments are consistent with the twelve factors listed in *Barber v. Kimbrell's, Inc.* 577 F.2d 216, 226 (4th Cir. 1978), and we therefore affirm the amount of the award in this case.

AFFIRMED.