Kenneth L. SAULS, Plaintiff,

v.

PENN VIRGINIA RESOURCES CORP. et al, Defendants.

Civ. A. No. 86–0123–B.

United States District Court,
W.D. Virginia,
Big Stone Gap Division.

Sept. 9, 1988.

As Amended Sept. 22, 1988.

**658**

C. Adrian White, Bristol, Va., E.V.E. Joy, Jackson, Miss., for plaintiff.

Hugh M. Fain, III, J. Waller Harrison, Richmond, Va., for defendants.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, District Judge.

This case is before the court on motions from both parties for sanctions against the other party pursuant to Fed.R.Civ.P. 11. For the reasons stated below, the court finds that neither party has violated Fed.R.Civ.P. 11.

## FACTS

Defendant Penn Virginia Corporation (hereinafter "Penn Virginia") is a developer of oil and gas properties and a contractor of oil and gas services. Defendant Controlled Resources Oil and Gas Corporation (hereinafter "CROG") is an oil field services contracting company. In 1983, defendant Penn Virginia purchased defendant CROG and, in 1985, CROG was merged into Penn Virginia.

Through CROG, in 1984 Penn Virginia owned 13% of the working interest in Roaring Fork, an oil and gas field drilling project near Big Stone Gap, Virginia. American Natural Resources Production Company (hereinafter "ANR") owned 72% of the working interest in Roaring Fork and was the operator of the oil field.

ANR employed numerous contractors to provide general oil field services work, including CROG. Beginning in March 1984, ANR and the plaintiff entered into a contract whereby the plaintiff was to provide welding and other service work at Roaring Fork. This contract was not written and did not specify plaintiff's period of employ-ment; however, both plaintiff and ANR apparently understood he would be employed at Roaring Fork for approximately five years. In order to perform his contract of employment, plaintiff, together with his family, moved from Mississippi to Virginia.

In August 1984, ANR audited all of the contractors working at Roaring Fork. The defendants allege that the audit of the plaintiff revealed that he had overcharged ANR approximately $40,000 by "padding" his invoices and by charging ANR for work that he had not performed. Consequently, the defendants argue that ANR subsequently released the plaintiff from their employment based on this audit. The plaintiff maintains that he did not overcharge.

In August 1986, the plaintiff brought an action against the defendants alleging that they had tortiously interfered with the contract between plaintiff and ANR. The plaintiff's complaint prayed for $4.8 million in actual damages and $10 million in punitive damages. The basis of the plaintiff's complaint was that Penn Virginia improperly pressured ANR into terminating plaintiff's employment with ANR so that defendant CROG could have the plaintiff's portion of the service work at Roaring Fork. The plaintiff maintains that a Penn Virginia vice president told two men, Mark Holbrook and Jack Morton, that Penn Virginia wanted the plaintiff "out" so that CROG could do the work that the plaintiff had been doing. The plaintiff also maintains that several people had told him that Penn Virginia was attempting to "squeeze him out" of his employment at Roaring Fork. Based on the fact that some of his equipment was damaged when it was left overnight in a CROG lot which was watched by a CROG employee, the plaintiff apparently believed that his equipment had been vandalized by Penn Virginia as part of its alleged effort to extinguish plaintiff's employment at Roaring Fork. The defendants admit that CROG was in competition with the plaintiff for the service work at Roaring Fork; however, the defendants insist that they did nothing improper and

that ANR terminated the plaintiff based on the August 1984 audit.

In June 1987, defendants deposed Judy Carter, ANR auditor; Gerald Cambre, ANR's Vice President of Drilling and Production and Ronald Heady, ANR's Regional Vice President of the Eastern Region and supervisor of the Roaring Fork Project. These ANR personnel testified that ANR did not retain the plaintiff because of the August 1984 audit. They also testified that Penn Virginia did not influence ANR's decision. The plaintiff maintains that it did not expect to prove its case by ANR personnel, however, because of the close business relationship between ANR and Penn Virginia.

Thereafter, discovery in the case continued. Plaintiff filed interrogatories and a request to produce on December 12, 1987. In January 1988, the defendants deposed plaintiff and several members of plaintiff's family. Plaintiff's depositions revealed that plaintiff based his complaint on:

(1) Defendant Penn Virginia allegedly complained to ANR that plaintiff used an ANR trailer in which to conduct plaintiff's business;

(2) Defendant Penn Virginia allegedly complained to ANR that plaintiff "shut down" CROG from hauling pipe; and

(3) A Penn Virginia vice-president allegedly commented that the defendants wanted CROG to have the plaintiff's work. During his deposition, plaintiff responded that he had only "speculated" that defendant CROG had damaged the equipment that plaintiff had left on CROG's lot. Also in January, the plaintiff deposed Al Jernigan.

In March 1988, the defendants moved for summary judgment and for sanctions pursuant to Fed.R.Civ.P. 11. In May 1988, plaintiff filed a second set of interrogatories and request to produce and requested an extension of time in order to respond to defendants' motion for summary judgment. The plaintiff did not file a brief in opposition to defendants' motion for summary judgment, however, and on June 17, 1988, it moved for a voluntary dismissal of its case pursuant to Fed.R.Civ.P. 41 which this court granted. Plaintiff then responded to defendants' motions for sanctions and counterclaimed under Fed.R.Civ.P. 11 for expenses.

## JURISDICTION

■ Plaintiff asserts that this court lacks jurisdiction to impose sanctions pursuant to Fed.R.Civ.P. 11 because the plaintiff filed and the court granted a voluntary dismissal pursuant to Fed.R.Civ.P. 41.

The Fourth Circuit has held that a court retains jurisdiction to impose sanctions pursuant to Fed.R.Civ.P. 11 after it has rendered its final judgment. *Langham–Hill Petroleum, Inc. v. Southern Fuels Co.,* 813 F.2d 1327, 7 Fed.R.Serv.3d 321 (4th Cir.1987). The First Circuit recently addressed this precise issue in *Muthig v. Brant Point Nantucket, Inc.,* 838 F.2d 600 (1st Cir.1988). The court held that a court does have jurisdiction to impose sanctions pursuant to Fed.R.Civ.P. 11 after a case has been voluntarily dismissed pursuant to Fed.R.Civ.P. 41, stating that "to read a 'post-dismissal' exemption into Rule 11 would obstruct the Rule's purpose of discouraging the assertion of baseless claims and defenses without, in any significant way, furthering any important Rule 41 policy." *Id.* at 604.

Thus, since there is no "post-voluntary dismissal" exception to Fed.R.Civ.P. 11, the court concludes that it has jurisdiction to determine whether there has been a violation of Fed.R.Civ.P. 11 in this case.

The defendants contend that the plaintiff violated Fed.R.Civ.P. 11 because its complaint lacked both factual and legal bases. The Rule provides:

> Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name, whose address shall be stated.... The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after a reasonable in-

quiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of the litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

Fed.R.Civ. 11.

■ An attorney has an affirmative duty to conduct a factual and legal investigation of the matter before he or she files a pleading. *Cleveland Demolition Co. v. Azcon Scrap Corp.*, 827 F.2d 984 (4th Cir. 1987). This investigation is judged by a standard of "objective reasonableness." *Cabell v. Petty*, 810 F.2d 463 (4th Cir.1987). To determine whether an attorney has met this standard, the court must look to whether "a reasonable attorney in like circumstances could believe his [or her] actions to be factually and legally justified." *Id.* at 466. The Advisory Committee notes to Rule 11 state that "what constitutes a reasonable inquiry may depend on such factors as how much time for investigation was available to the signer; ... whether the pleading was based on a plausible view of the law...." Fed.R.Civ.P. 11, advisory committee's note. Thus, the reasonableness of the inquiry depends, to a large extent, on the circumstances that existed at the time the attorney filed the pleading.

The requirements of Fed.R.Civ.P. 11 do not end with the filing of the complaint. The rule, by its terms, applies to "every pleading, motion, or other paper." Fed.R. Civ.P. 11. As recently stated by the Fifth Circuit, "Rule 11 applies to each and every paper signed during the course of the proceedings and requires that each filing reflect a reasonable inquiry." *Thomas v. Capital Security Services, Inc.*, 836 F.2d 866 (5th Cir.1988). Thus, the standard of "reasonableness under the circumstances" applies throughout the course of the litigation. *See, Dalton v. United States*, 800 F.2d 1316 (4th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1911, 95 L.Ed.2d 516 (1987).

■ Although it is clear that Fed.R.Civ. P. 11 applies to every stage of litigation, there is disagreement among the circuits as to whether the rule constitutes a continuing obligation "constantly to reexamine one's pleadings and other papers" or whether the rule applies only to the initial signing of a pleading, motion or other paper. Levin and Sobel, *Achieving Balance in the Developing Law of Sanctions*, 36 Cath.U.L.Rev. 587 (1987).

Under the "continuing obligation" view, if a pleading is signed in compliance with Fed.R.Civ.P. 11, the attorney's duty is not discharged even as to that document. *See, e.g., Robinson v. National Cash Register Co.*, 808 F.2d 1119 (5th Cir.1987). If the attorney subsequently discovers that the claim is not well grounded in fact, the attorney has a duty to withdraw the claim. *Id.*

The competing view provides that if a pleading is signed in compliance with Fed. R.Civ.P. 11, the attorney's duty is fulfilled as to that document. *Thomas v. Capital Security Services, Inc.*, 836 F.2d 866 (5th Cir.1988). The Fifth Circuit recently adopted this view rejecting its earlier position that Fed.R.Civ.P. 11 is a "continuing obligation." *Id.* In *Thomas*, the court held that "Rule 11 applies only to the signing of pleadings and imposes a standard of good faith and reasonable investigation as of the date of that signing." *Id.* The court reasoned that:

a construction of Rule 11 which evaluates an attorney's conduct at the time a 'pleading, motion, or other paper' is signed is consistent with the intent of the rulemakers and the plain meaning of the language contained in the rule. Like a snapshot, Rule 11 review focuses upon the instant when the picture is taken—

when the signature is placed on the document. Rule 11 was promulgated for a particular purpose—to check abuses in the signing of pleadings. Fed.R.Civ.P. 11, advisory committee notes.

*Id.* at 875. The court noted that this view does enforce Fed.R.Civ.P. 11 because "as a practical matter ... virtually all suits will require a series of filing ... [and] Rule 11 applies to each and every paper signed during the course of the proceedings." *Id.*

Likewise, the Third Circuit also rejects the view that Fed.R.Civ.P. 11 imposes a "continuing obligation." *Gaiardo v. Ethyl Corp.*, 835 F.2d 479 (3d Cir.1987). According to the Third Circuit, the proper way to evaluate whether Fed.R.Civ.P. 11 has been violated is to "concentrate[ ] on circumstances existing at the time the paper was filed." *Id.* at 484. This view does not make Fed.R.Civ.P. 11 toothless, however, because every paper filed with the court "is judged by information available when [it is] filed." *Id.*

The Second Circuit also rejects the "continuing obligation" view. In *Oliveri v. Thompson,* the court held that Fed.R.Civ.P. 11 is limited "to testing the attorney's conduct at the time a paper is signed....," 803 F.2d 1265, 1274 (2d Cir. 1986), *cert. denied,* 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987). The court based its holding on:

> (1) the fact that the 'key' to Fed.R. Civ.P. 11 is the 'certification flowing from the signature to a pleading, motion or other paper;'
>
> (2) the fact that Rule 11 is entitled 'Signing of Pleadings, Motions and other Papers; Sanctions;'
>
> (3) the 1983 amendment to the rule that added the words 'motion or other paper' to the word 'pleading;'
>
> (4) the admonition of the advisory committee to judge a signer's conduct at the time the document is signed.

*Id.*

This court, therefore, concludes that the relevant inquiry under Fed.R.Civ.P. 11 is whether it was reasonable for an attorney to sign the document in question at the time it was signed. If, for example, it was reasonable for an attorney to sign and file a complaint at the time the complaint was submitted, the attorney has not violated Fed.R.Civ.P. 11 by signing the complaint. If subsequent facts reveal that the complaint is not well grounded in fact, the attorney's signing of the complaint still has not violated Fed.R.Civ.P. 11. Should the attorney continue, however, to sign and file motions and other papers pursuing this baseless claim, the attorney probably has violated Fed.R.Civ.P. 11 by placing his signature on these subsequent documents if it has become obvious that it is not reasonable to do so.

## APPLICATION OF FED.R.CIV.P. 11

Defendants contend that plaintiff's complaint lacked a legal basis. This contention is without merit. Plaintiff allege that the defendants, who were third parties to the plaintiff's contract with ANR, tortiously interfered with that contract. Virginia law recognizes the tort of tortious interference with a contract and the elements thereof are as follows:

> (1) the existence of a valid contractual relationship or business expectancy;
>
> (2) knowledge of the relationship or expectancy on the part of the interferor;
>
> (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and
>
> (4) resultant damage to the party whose relationship or expectancy has been disrupted.

*Chaves v. Johnson,* 230 Va. 112, 335 S.E.2d 97, 102 (1985). An additional element is required if the contract is terminable at will-the third party must have intentionally and improperly interfered. *Id.,* 335 S.E.2d at 103. Improper methods of interference include: illegal or tortious means, means that involve unethical conduct, and "sharp dealing, overreaching, or unfair competition." *Duggin v. Adams,* 234 Va. 221, 360 S.E.2d 832, 837 (1987). Thus, since tortious interference with a contract, including a contract of employment terminable at will, is a recognized cause of action under Virginia law, the plaintiff's complaint had a legal basis.

■ The defendants' primary contention is that the plaintiff's claim lacks a factual basis. As noted earlier, Fed.R.Civ.P. 11 requires both a legal and factual investigation before a complaint is filed. *Cleveland Demolition Co. v. Azcon Scrap Corp.*, 827 F.2d 984 (4th Cir.1987). An attorney must continue his factual and legal investigations as the case progresses because the filing of every motion, pleading and other paper must be reasonable under the circumstances. *See, Dalton v. United States*, 800 F.2d 1316 (4th Cir.1986).

The court concludes that plaintiff's counsel did not violate Fed.R.Civ.P. 11 by signing and filing the complaint. ANR had employed the plaintiff to do service work in an oil field. He was released from that employment and his employer's partner, the defendants, had gladly assumed the work. The plaintiff had heard that the defendants were in fact responsible for plaintiff's termination. Moreover, the plaintiff had some equipment damaged while it was on a lot that was under the defendant CROG's control. Also plaintiff's counsel admits that they were working under time constraints before the complaint was filed because the statute of limitations had almost expired. Thus looking at the case objectively, there was a possibility that the defendants had intentionally interfered with plaintiff's contract using improper methods. This court concludes, therefore, that under the circumstances existing at the time the complaint was filed plaintiff and his counsel did not act unreasonably in filing the complaint. The facts later revealed by depositions are not relevant at this juncture because they were unknown to counsel when the complaint was filed.

■ Defendants argue, and the court agrees, that the recent Fourth Circuit decision, *Fahrenz v. Meadow Farm Partnership*, 850 F.2d 207 (4th Cir.1988), is factually similar to the present case. In that case, the district court held that counsel who pursued claims after depositions made clear that the claims were not "well grounded in fact" violated Fed.R.Civ.P. 11. *Meadow Ltd. Partnership v. Heritage Savings & Loan*, 118 F.R.D. 432 (E.D.Va. 1987). As a sanction the court required the plaintiff to pay a portion of the defendant's expense incurred during the time following the depositions until the case was dismissed. *Id.* The court stated that "[t]he duty under Rule 11 to inquire into the facts is a continuing duty...." *Id.* at 434.

The Fourth Circuit affirmed the district court decision. *Fahrenz*, 850 F.2d at 211. The court noted that the "[p]laintiff's counsel acted unreasonably in filing a brief in opposition to summary judgment.... We conclude, therefore, that the trial court's order, imposing Rule 11 sanctions for the relevant time frame thereafter, is entitled to deference as it was not an abuse of discretion." *Id.* at 210.

This court should first make clear that it does not read *Fahrenz* to stand for the proposition that the Fourth Circuit accepts the "continuing obligation" view of Fed.R.Civ.P. 11. The court did not discuss the two views. *Fahrenz*, 850 F.2d at 207. Rather, the court reviewed the district court's findings and found that the district court had not abused its discretion. *Id.* at 211.

Although this court believes that the *Fahrenz* decision does not expressly adhere to either the "continuing obligation" view or the "snapshot" view of Fed.R.Civ.P. 11, the court believes *Fahrenz* is consistent with the latter view. The court expressly approved of imposing sanctions for the specific time frame during which it was obvious that the claim was not well grounded in fact. Also, the court's statement that the "[p]laintiff's counsel acted unreasonably in filing a brief in opposition to summary judgment" supports the proposition that for an attorney to violate Fed.R.Civ.P. 11 he or she must sign and file a document with the court when it is unreasonable, at that time, to do so.

In the present case, after the first set of discovery depositions, the plaintiff's case was obviously a very weak one. After those depositions, the plaintiff's attorneys signed and filed a response to defendants' interrogatories, two sets of interrogatories and requests to produce and a notice of a

deposition before they moved for voluntary dismissal. There is no indication that the plaintiff's attorneys filed these documents for any improper purpose. Rather, the attorneys were fulfilling their duty to continue investigating the facts of the case.

The court finds that the papers signed and filed after the June 1987 depositions do not constitute a violation of Fed.R.Civ.P. 11. The plaintiff's attorneys acted reasonably under the circumstances. The depositions of Gerald Cambre, Ronald Heady and Judy Carter revealed that the case may not have been well grounded in fact. After this the only way to discover whether there were facts favoring the plaintiff's claim was to continue to investigate. Therefore, it was reasonable for the plaintiff's attorney to sign and file papers in order to conduct discovery. Moreover, the discovery conducted by the plaintiff's attorney was reasonable with respect to amend. After subsequent discovery only weakened the plaintiff's case, the plaintiff moved for voluntary dismissal. Had the plaintiff barraged the defendants with discovery after it became apparent that the plaintiff's case was weak, that course of action would have been unreasonable under the circumstances. The plaintiff here, however, conducted a reasonable amount of discovery and then voluntarily dismissed the case.

The court would like to note that the course of action taken by the plaintiff in this case differs in a significant way from that taken by the plaintiff in the *Fahrenz* case. In *Fahrenz*, the plaintiff filed a brief opposing the defendant's motion for summary judgment. *Fahrenz*, 850 F.2d at 210. The plaintiff here, rather than opposing the defendants' motion for summary judgment, voluntarily dismissed its case. It would have been unreasonable here, as it was in *Fahrenz*, for the plaintiff to have opposed the defendants' motion for summary judgment. By the same token, it was very reasonable for the plaintiff here to have voluntarily dismissed its case.

Although the court finds that the plaintiff did not violate Fed.R.Civ.P. 11, the court does not find that it was unreasonable for the defendants to have moved under Rule 11 for sanctions against the plaintiff. Therefore, the court will not impose sanctions against the defendants as requested by plaintiff's counterclaim.

## CONCLUSION

The plaintiff did not violate Fed.R.Civ.P. 11 by signing and filing a complaint against the defendants. The plaintiff had a legal basis for its complaint. The plaintiff also, in light of the circumstances, made a reasonable factual inquiry before filing its complaint.

Although the first three depositions conducted by the defendants revealed that plaintiff's complaint was a weak one, the plaintiff did not violate Fed.R.Civ.P. 11 by signing and filing papers with the court that enabled it to continue discovery. The signing of these papers was reasonable because the plaintiff is required to investigate the factual basis of its case. It would be inconsistent to require such investigation and then to sanction plaintiff for attempting to fulfill these requirements. The discovery conducted by the plaintiff after the defendants' first depositions was also modest and reasonable as to amount. The court therefore concludes that the plaintiff's attorneys' actions in signing and filing its pleadings, motions and other papers with the court was objectively reasonable under the circumstances that existed at the time each document was signed.

The court also finds that the defendants did not violate Fed.R.Civ.P. 11 by filing a motion for sanctions against plaintiff pursuant to Fed.R.Civ.P. 11.

## ORDER

For reasons stated in the Memorandum Opinion entered this day, the motion of defendants for sanctions against the plaintiff and his attorneys is denied and the motion of the plaintiff for sanctions against the defendants is denied.

This case is stricken from the docket of this court.