**Emil Milton SOWARDS, Plaintiff,**

v.

**SWITCH ENERGY CO., INC., et al., Defendants.**

**Civ. A. No. 89–0182–B.**

United States District Court,
W.D. Virginia,
Big Stone Gap Division.

Sept. 17, 1990.

---

**1400**

Donald E. Earls, Norton, Va., for plaintiff.

Gerald L. Gray, Clintwood, Va., Stephen M. Hodges, Penn, Stuart, Eskridge & Jones, Abingdon, Va., Philip A. Marstilla, Parker, Pollard & Brown, Richmond, Va., for defendants.

## MEMORANDUM OPINION

WILSON, District Judge.

This is a trespass action for damages to plaintiff's land located in Wise County, Virginia. Plaintiff, Emil Sowards, is a Maryland resident. Defendant, Switch Energy Co., Inc., (hereinafter "Switch Energy") is a Kentucky corporation with its principal place of business in that state. Defendant, Kelly Energy Company, Inc., (hereinafter "Kelly Energy") is a Virginia corporation with its principal place of business in this state; and defendant, Cumberland Valley Rural Electric Cooperative Corporation, (hereinafter "Cumberland") is a Kentucky corporation with its principal place of business in Kentucky. Jurisdiction is predicated on diversity of citizenship and more than $50,000.00 in controversy. 28 U.S.C. § 1332.

Cumberland has moved to dismiss for lack of personal jurisdiction, or in the alternative, to dismiss for failure to state a claim upon which relief can be granted. Cumberland also is seeking sanctions under Rule 11. Evidence was heard in accordance with Rule 43(e). For the reasons stated below, Cumberland's motion to dismiss for lack of personal jurisdiction is granted, and its motion for sanctions under Rule 11 is denied.

Sowards alleges that Kelly Energy, without his authority, dumped large quantities of slate refuse on his land, discarded dilapidated machinery and other scrap equipment, cut and removed timber, built and constructed roadways, erected power poles on the land, and routed electrical current across the land to Kelly Energy's mining operation some distance away. Switch Energy is alleged to have participated in some of these activities on Sowards' land and Cumberland is alleged to have contributed to the trespass by delivering electrical power knowing that it would be conducted across Sowards' land without authority.

The evidence heard under Rule 43(e), which essentially was uncontested, established that Cumberland is a Kentucky corporation with its principal place of business and only office in Kentucky. Nearly all of Cumberland's power is used in Kentucky

and Tennessee. Cumberland has never maintained operations, agents or employees in Virginia and never advertised in Virginia. It never has had a telephone listing, mailing address or property in Virginia. No evidence was introduced that it ever negotiated a contract in Virginia or solicited business in Virginia. At most, Cumberland has supplied electricity in Kentucky to two or three companies which transmitted the power to operations in Virginia.

From 1979 until 1990, Kelly Energy purchased power from Cumberland in Kentucky. Cumberland established a metering point in Kentucky approximately three miles from the Virginia border. Kelly Energy erected poles from the metering point in Kentucky to the site of its operations in Virginia and connected the wiring. Cumberland did nothing more than supply electrical power to Kelly Energy at the metering site in Kentucky and send invoices to Kelly Energy in Virginia for which it received payment in Kentucky. There is no evidence that Cumberland carried on any activity in Virginia or knew that the power which it had sold Kelly Energy had been routed by Kelly Energy across the plaintiff's land.

## PERSONAL JURISDICTION

Plaintiff seeks to support personal jurisdiction over Cumberland with three facts: (1) Cumberland generated the power that coursed through the transmission lines erected across plaintiff's land; (2) Cumberland knew its power was routed into Virginia; and (3) Cumberland sent invoices to Kelly Energy in Virginia and derived revenue from its agreement with Kelly Energy. The court finds that these facts, viewed either separately or together, fall far short of satisfying the requirements of due process.[1]

Plaintiff's argument relies upon the line of authority, which recognizes that there is nothing contrary to fair play and substantial justice and there is nothing inconsistent with our federal system in holding a product supplier that places a defective product in the stream of commerce accountable in a forum where its product causes injury, *see World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297–98, 100 S.Ct. 559, 567–68, 62 L.Ed.2d 490 (1980), if it has "purposefully established 'minimum contacts' in the forum." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985). Plaintiff's reliance upon this line of authority is misplaced. Cumberland has not supplied a defective product, and it has not purposefully availed itself of the privilege of conducting activities in the forum state, Virginia. *See Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958).

There is no question but that Cumberland's power could be viewed as having entered the "stream of commerce" and that the use of its power in Virginia was clearly "foreseeable." "Foreseeability alone, however, 'has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause.'" *Federal Ins. Co. v. Lake Shore, Inc.,* 886 F.2d 654, 658 (4th Cir.1989) (citing *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, at 295, 100 S.Ct. 559, at 566 (1980)). Rather, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson,* 357 U.S. at 253, 78 S.Ct. at 1240; *Lake Shore, Inc.,* 886 F.2d at 658. "The defendant's conduct and connection with the forum State [must be] ... such that he should reasonably anticipate being haled into court there." *World–Wide*

---

1. When evaluating personal jurisdiction in a diversity action, "a two-step analysis is normally required." *English & Smith v. Metzger,* 901 F.2d 36, 38 (4th Cir.1990). First, the defendant must be subject to suit under the Virginia long-arm statute, Va.Code Ann. § 8.01–328.1. Second, exercise of jurisdiction must comport with the due process clause. *Id.* However, the Virginia long-arm statute has often been recognized as permitting jurisdiction to the extent due process permits. *See, e.g., Brown v. American Broadcasting Co.,* 704 F.2d 1296, 1301 (4th Cir.1983); *Peanut Corp. v. Hollywood Brands, Inc.,* 696 F.2d 311, 313 (4th Cir.1982). *See also Kolbe, Inc. v. Chromodern Chair Co.,* 211 Va. 736, 740, 180 S.E.2d 664, 667 (1971).

*Volkswagen,* 444 U.S. at 297, 100 S.Ct. at 567 (citing *Kulko v. California Superior Court,* 436 U.S. 84, 97–98, 98 S.Ct. 1690, 1699–1700, 56 L.Ed.2d 132 (1978)).

■ Purposeful availment is determined by examining those contacts with a forum state that are initiated by the defendant. "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *Chung v. NANA Dev. Corp.,* 783 F.2d 1124, 1127 (4th Cir.1986) (quoting *Hanson,* 357 U.S. at 253, 78 S.Ct. at 1239). Focusing upon the defendant's acts serves the underlying due process objective of fair notice, and provides "a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *World–Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. at 567. *See also Burger King,* 471 U.S. at 472, 105 S.Ct. at 2182. Therefore, jurisdiction is proper "only where the defendant's contacts create a 'substantial connection' with the forum." *Lake Shore, Inc.,* 886 F.2d at 658 (citing *Burger King,* 471 U.S. at 475, 105 S.Ct. at 2183).

■ Certainly, Cumberland's attenuated contact with Virginia by mailing invoices to Kelly Energy is not such that Cumberland should have anticipated being haled into court in Virginia. Cumberland conducted no negotiations in Virginia, had no agents here, did not solicit business here, and did not erect power lines here. Cumberland supplied a metering point in Kentucky, and otherwise conducted its business dealings to avoid being subjected to personal jurisdiction in Virginia.[2]

A substantial factor to be considered on the question of whether Cumberland "purposefully availed" itself of the privilege of conducting business in Virginia is the manner in which Cumberland structured its transactions, *Chung,* 783 F.2d at 1127 (insignificant relations with the forum state suggest an "absence of purposefulness"), although not completely answering the question of whether it comports with "traditional notions of fair play and substantial justice" to subject Cumberland to jurisdiction in Virginia. *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)).

In *Chung,* an Alaska corporation ("NANA"), in response to the unilateral telephone inquiries of a Virginia resident, entered into a contract for goods. 783 F.2d at 1125–26. Payment and delivery were to occur in Alaska, and NANA had no other contacts with Virginia. *Id.* at 1126. Due to an unexpected delay, some of the goods had to be shipped into Virginia. *Id.* Although NANA's contacts with Virginia were tenuous, the district court found personal jurisdiction over NANA in Virginia. *Id.* The court of appeals reversed the decision of the district court, holding that NANA lacked the requisite contacts with Virginia, and that NANA had "done everything possible to confine its United States business to its home state of Alaska during this transaction." *Id.* at 1128. Similarly, Cumberland attempted to confine its business to its home state. Cumberland did not and would not erect transmission lines beyond the borders of Kentucky into Virginia. All negotiations took place in Kentucky, and Cumberland established a metering point in Kentucky. Thus, contrary to purposefully availing itself of the privi-

---

**2.** Some courts have recognized a distinction between general and specific jurisdiction. *See Federal Ins. Co. v. Lake Shore, Inc.,* 886 F.2d 654, 660 (4th Cir.1989). General jurisdiction is the exercise of personal jurisdiction over a defendant in an action which does not arise out of a defendant's contact with the forum. *Helicopters Nacionales de Colombia v. Hall,* 466 U.S. 408, 414 n. 9, 104 S.Ct. 1868, 1872 n. 9, 80 L.Ed.2d 404 (1983). To satisfy this due process standard, a defendant's contacts with a forum must be "continuous and systematic." By contrast, specific jurisdiction concerns the exercise of personal jurisdiction over a defendant in an action which arises out of a defendant's contact with a forum. To meet this standard, a defendant must direct his or her activities at the forum. On the facts of this case, plaintiff Sowards cannot satisfy the command of the Due Process Clause of the Fourteenth Amendment under either theory.

lege of conducting activities in Virginia, Cumberland purposefully structured its transactions to avoid conducting activities in Virginia.

While Cumberland did invoice its purchaser in Virginia, it did not, by that act, purposefully avail itself of the privilege of conducting activities within Virginia. Although the exercise of jurisdiction is a more flexible standard today, due to the enormous expansion of interstate commerce, see *International Shoe*, 326 U.S. at 310, 66 S.Ct. at 154, "it is a mistake to assume that this trend heralds the eventual demise of all restrictions on ... personal jurisdiction." *Hanson*, 357 U.S. at 251, 78 S.Ct. at 1238. Thus, interstate interaction and commerce do not automatically become grounds for the exercise of personal jurisdiction. A non-resident does not "purposefully avail" himself of the privilege of conducting activities in Virginia simply because he calls or writes a Virginia resident requesting payment. *See Processing Research, Inc. v. Larson*, 686 F.Supp. 119, 124 (E.D.Va.1988). *See also Abyaneh v. Merchants Bank, North*, 667 F.Supp. 198 (M.D.Pa.1986) (three phone calls into forum state insufficient to confer personal jurisdiction); *Reliance Steel Prods. Co. v. Watson, Ess, Marshall, and Enggas*, 675 F.2d 587 (3d Cir.1982) (delivering legal advice and bills to client in Pennsylvania not sufficient to sustain personal jurisdiction there); *Colonial Leasing Co. v. Pugh Bros. Garage*, 735 F.2d 380 (9th Cir.1984) (monthly payments to Oregon resident inadequate to satisfy due process requirements); *Breiner Equip. Co. v. Dynaquip, Inc.*, 539 F.Supp. 204 (E.D.Mo.1982) (phone calls and letters into Missouri do not amount to "minimum contacts" for due process analysis).

In determining the reasonableness of exercising personal jurisdiction, the court also must consider "the shared interest of the several states in furthering fundamental substantive social policies." *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113, 107 S.Ct. 1026, 1034, 94 L.Ed.2d 92 (1986) (O'Connor, J.). By rejecting Sowards' argument for personal jurisdiction over Cumberland, this court is mindful of the broader implications of its decision for the electric power industry. Most of the electric power transmission systems in this country operate as integral parts of an interconnected network in order to supply power anywhere in the country (and two Canadian provinces) when a generating deficiency occurs:

> Virtually all power generated by the electric power industry is produced by plants which are interconnected in three large networks. Each network consists of many systems tied together by interconnections. The largest of these networks embraces 39 states and 2 Canadian provinces, covering the entire United States east of Texas and the Rocky Mountains and much of eastern Canada.

C. Phillips, Jr., *The Regulation of Public Utilities* 538 (1985).

It would be unreasonable to suggest that a western utility could be haled into court in Virginia because its electricity might have been routed here. Yet, plaintiff's argument implies precisely that. As a supplier within an interconnected system, a western utility might send its power eastward during periods of peak demand in the east. In many such instances, the same basic jurisdictional points made by plaintiff could be made: the utility generates the power; the utility knows its destination; and the utility invoices, in some fashion or other, its customer, the receiving utility. Under these general facts, the utility would have no control as to where it might be subject to suit. With this loss of control, jurisdiction would rest on nothing more than "random, isolated, or fortuitous" circumstances. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984). If the incidental act of mailing invoices into the forum state rises to the level of "purposefully availing," "little would remain of the safeguard of personal liberty from jurisdictional abuse the due process clause affords." *Chung*, 783 F.2d at 1130.

The court concludes that defendant Cumberland has not purposefully availed itself of the privilege of conducting activities in Virginia. Thus, this court lacks personal

jurisdiction to decide plaintiff Sowards' claim against Cumberland.

## MOTION FOR SANCTIONS

Cumberland has moved this court to impose sanctions on Sowards' counsel pursuant to Rule 11. Fed.R.Civ.P. 11.[3] The court denies Cumberland's motion.

Rule 11 is meant as a check on the representations "implicit in a lawyer's signature on a pleading." *Chu By Chu v. Griffith*, 771 F.2d 79, 81 (4th Cir.1985). This rule places on an attorney "an affirmative duty to conduct a factual and legal investigation of the matter before he or she files a pleading." *Sauls v. Penn Virginia Resources Corp.*, 121 F.R.D. 657, 660 (W.D.Va.1988) (citing *Cleveland Demolition Co. v. Azcon Scrap Corp.*, 827 F.2d 984 (4th Cir.1987). The attorney's investigation into the foundation of his or her client's claim is judged by the objective standard of reasonableness. *Sauls*, 121 F.R.D. at 660. *See also Cabell v. Petty*, 810 F.2d 463 (4th Cir.1987). The test for reasonableness is whether "a reasonable attorney in like circumstances could believe his [or her] actions to be factually and legally justified." *Cabell*, 810 F.2d at 466. As the Federal Rules Advisory Committee pointed out, "what constitutes a reasonable inquiry may depend on such factors as ... whether the pleading was based on a plausible view of the law...." Fed.R.Civ.P. 11, advisory committee's note. "Thus, the reasonableness of the inquiry depends, to a large extent, on the circumstances that existed at the time the attorney filed the pleading." *Sauls*, 121 F.R.D. at 660.

Under the standard set forth above, the court finds that plaintiff's argument is misplaced, but not unreasonable, and therefore, not violative of Rule 11. Plaintiff Sowards has based his argument on a stream of commerce theory of personal jur-

isdiction. Such a theory has not been categorically rejected. As the court of appeals has noted: "We need not, of course, reject a 'stream of commerce' theory in all circumstances.... Such a course would be problematic because the issue is one that has closely divided the Supreme Court." *Federal Ins. Co. v. Lake Shore, Inc.*, 886 F.2d 654, 659 (4th Cir.1989). Even though the court rejects plaintiff's position on personal jurisdiction, plaintiff's argument is not so lacking in legal foundation as to warrant the imposition of sanctions.

Cumberland also suggests that by failing to cooperate or to respond appropriately to Cumberland's request to be dismissed as a party in this lawsuit, plaintiff is subject to Rule 11 sanctions. However, Rule 11 "does not purport to be a means for district courts to sanction conduct in the course of a lawsuit ... that does not involve the *signing* of pleadings, motions, or other papers." *Simpson v. Welch*, 900 F.2d 33, 36 (4th Cir.1990) (per curiam). Accordingly, Cumberland's complaints regarding plaintiff's failure to dismiss it as a party are not grounds for the imposition of sanctions.

In conclusion, the court finds that plaintiff Sowards has failed to demonstrate that Cumberland's attenuated contact with the Commonwealth of Virginia constitutes a purposeful availment by Cumberland of the benefits and protections of the laws of this state. The court does not find, however, that plaintiff's arguments lack reasonable factual or legal foundation. Therefore, Cumberland's motion to dismiss for lack of personal jurisdiction is granted, and its motion for sanctions under Rule 11 is denied.

---

**3.** Rule 11 states in pertinent part that:

The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.