**LORAL FAIRCHILD CORP., Plaintiff,**

v.

**VICTOR COMPANY of JAPAN, LTD., et al., Defendants.**

No. 92 CV 0128 (SJ).

United States District Court, E.D. New York.

Oct. 13, 1992.

Charles D. Kreps, Jr., Kostelanetz Ritholz Tigue & Fink, New York City, James H. Wallace, Jr., Wiley, Rein & Fielding, Washington, D.C., for plaintiff.

Philip Furgang, New York City, Richard J. Codding, Spensley Horn Jubas & Lubitz, Los Angeles, Cal., for defendant Murata Business Systems, Inc.

## MEMORANDUM AND ORDER

JOHNSON, District Judge:

### INTRODUCTION

Plaintiff Loral Fairchild Corp. commenced this action against defendants Victor Company of Japan, US JVC Corp., Nikon Corporation, Nikon, Inc., Murata Machinery Ltd., Murata Business Systems, Inc., Oki Electric Industry Co. Ltd, Oki America, Inc., Ricoh Company, Inc., and Ricoh Corporation pursuant to 35 U.S.C. §§ 271 & 284 alleging that the defendants manufactured, marketed and distributed infringing products. Defendant Murata Machinery, Ltd. moves pursuant to Fed. R.Civ.P. 12(b)(2) to dismiss the complaint against it for lack of *in personam* jurisdiction.[1] For the reasons stated below, the motion is denied.

---

1. Originally, the Defendant also moved to quash service of process on the ground that it was not properly served under the Hague Convention.

After this Court heard oral argument on this motion and prior to the issuance of this decision, the Plaintiff properly served the Defendant

## I. PROCEDURAL HISTORY

On November 14, 1991, plaintiff Loral Fairchild Corp. ("Loral Fairchild"), a Delaware corporation with a principal place of Business in New York and a 'presence' in Virginia, commenced this patent infringement suit in the Eastern District of Virginia against Murata Machinery, Ltd. ("Murata–Japan") and several other defendants. Murata–Japan is a Japanese manufacturer of facsimile machines, textile machinery and other products. The complaint alleges that Murata–Japan's facsimile machines utilize 'charge couple devices' or 'CCDs' (semiconductor 'chips' used as a light sensing component) which infringe upon plaintiff's United States Patent No. 3,931,-674 (the " '674 patent") in violation of 35 U.S.C. §§ 271 & 284 which prohibit the unauthorized manufacture, sale and importation of patented products and technology. Subsequently, on November 26, 1991, plaintiff amended its complaint adding Murata Business Systems, Inc. ("Murata–America"), the United States based distributor of the Murata–Japan facsimile machines, as a co-defendant.

On January 3, 1992, the Virginia Court entered an 'order', pursuant to 28 U.S.C. § 1404(a), transferring the action to the Eastern District of New York "for purposes of convenience". However, the Order expressly reserved Murata–Japan's right to challenge Personal Jurisdiction in the transferee forum. The action was transferred into the Eastern District on January 13, 1992. Then, on January 21, 1992, Murata–Japan filed a motion to dismiss pursuant to Fed.R.Civ.P. ("Rule") 12(b)(2) challenging Virginia's ability to exercise *in personam* jurisdiction over it.[2] Murata–America, however, makes no such challenge.

## II. FACTS

The Court makes the following findings of fact. Murata–Japan is a Japanese corporation with a principal place of business in Kyoto, Japan. It owns 100% percent of the stock of Murata America, Inc. ("Murata America, Inc."), which in turn owns 100% of the stock of Murata–America,[3] a North Carolina Corporation with a principal place of business in Texas. Four of the seven members of Murata–America's board of directors are Murata–Japan representatives.

Murata–America distributes Murata–Japan facsimile machines to retailers within the United States and, specifically, Virginia. The facsimile machines are accompanied by operation manuals designating Murata–Japan as the source and bearing the "Murata" trademark which is registered with Murata–Japan. In addition, the operation manuals state that their product complies with United States technical requirements.

Retail dealers in Virginia sell facsimile machines manufactured by Murata–Japan to Virginia residents. The Court takes judicial notice of advertisements taken from the Washington Post from January 24, 1992 to March 1, 1992. Plaintiff's Exhibit ("Pl.Exh.") 1. The advertisements indicate that at least three retail chains sell Murata–Japan facsimile machines. The court finds that Murata–Japan has derived a substantial economic benefit from the sale of these products.

## III. ANALYSIS

■ The issue is whether Murata–Japan had sufficient minimum contacts with Virginia to justify the exercise of 'specific' *in personam* jurisdiction over it. "The burden of proving jurisdiction rests with the plaintiff." *Medeco Sec. Locks, Inc. v. Fichet–Bauche*, 568 F.Supp. 405, 407 (D.Va. 1983). Plaintiff predicates jurisdiction over Murata–Japan on the Virginia long-arm statute.[4] When evaluating the propriety of

---

and the Defendant withdrew its objection to service.

**2.** Neither party to this motion disputes the application of Fourth Circuit law.

**3.** Murata–America admits jurisdiction.

**4.** Va.Code Ann. § 8.01–328.1 (Supp.1992) provides for the exercise of personal jurisdiction over non residents who engage in some purposeful activity within the Commonwealth of Virginia, as to a cause of action arising from that activity.

long-arm jurisdiction, a two-step analysis is normally required. *English & Smith v. Metzger*, 901 F.2d 36, 38 (4th Cir.1990). First, the court must determine whether the statutory language applies to the defendant. *Id.* Then, assuming the answer to the first question is in the affirmative, the court must determine whether the assertion of jurisdiction is consistent with the Due Process Clause of the United States Constitution. *Id.; See also Peanut Corp. of America v. Hollywood Brands, Inc.*, 696 F.2d 311, 313 (4th Cir.1982).[5]

### A. The Statutory Scheme

The Virginia long-arm provides in pertinent part:

A. A court may exercise personal jurisdiction over a person (natural or fictitious), who acts directly or by an agent, *as to a cause of action arising from the person's:*

. . . . .

3. Causing tortious injury by an *act or omission in this Commonwealth* . . . .

4. Causing tortious injury in this Commonwealth by an *act or omission outside this commonwealth* if he . . . derives substantial revenue from goods used or consumed or services rendered in this Commonwealth . . . .

Va.Code Ann. § 8.01–328.1(A) (Supp.1992) (emphasis added). Subsection (A)(3) applies to conduct transpiring in Virginia while subsection (A)(4) extends to conduct outside Virginia which causes injury within. Both subsections, however, pertain to conduct causing a tortious injury in Virginia. Each therefore has relevance since "patent infringement is a tort." *Carbice Corp. of America v. American Patents Development Corp.*, 283 U.S. 27, 51 S.Ct. 334, 75 L.Ed. 819 (1931); *Marston v. Gant*, 351 F.Supp. 1122, 1124 (E.D.Va.1972). Thus, assuming tortious injury resulted in Virginia, the question remains whether the infringing acts happened within or outside Virginia.

■ Plaintiff, in its complaint, alleges that Murata–Japan "actively induced infringement" by Murata–America in violation of 35 U.S.C. § 271(b)[6] by manufacturing facsimile machines in Japan which Murata–America subsequently imported and sold within Virginia.[7] "To 'actively induce' patent infringement means in essence to aid and abet such infringement by another." *Marston v. Gant*, 351 F.Supp. 1122, 1125 (E.D.Va.1972). This language requires some 'affirmative' act on the part of a defendant which aided another's infringement. *See Marston*, 351 F.Supp. at 1125. Thus, Murata–Japan's affirmative acts which made Murata–America's infringement possible, *vis-a-vis* importation and sales, are at issue in determining whether § (A)(3) or (A)(4) are implicated.

In *Marston*, defendant Okabe, a Japanese corporation, manufactured patent infringing furniture in Japan and sold it to

---

5. The Fourth Circuit recognizes that the Virginia Long–Arm extends in personam jurisdiction to the outermost parameters of Due Process. *Peanut Corp. of America v. Hollywood Brands, Inc.*, 696 F.2d 311, 313 (4th Cir.1982). Accordingly, "the state law and Due Process analyses are . . . identical," *Chung v. NANA Development Corp.*, 783 F.2d 1124, 1127, n. 2 (4th Cir.1986). Hence, many circuit and district court opinions refrain from separate Long–Arm analysis. Nevertheless, the court has provided the dual analysis.

6. Title 35 U.S.C. § 271 defines patent infringement in pertinent part as follows:

(a) Except as otherwise provided in this title, whoever without authority makes, uses or sells any patented invention, within the United States during the term of the patent therefor, infringes the patent.

(b) Whoever actively induces infringement of a patent shall be liable as an infringer.

(g) Whoever without authority imports into the United States or sells or uses within the United States a product which is made by a process patented in the United States shall be liable as an infringer, if the importation, sale or use of the product occurs during the term of such process patent.

7. The allegations in the complaint pertaining to Murata–Japan are rather nebulous in that they mimic some of the language from 35 U.S.C. § 271 without applying a specific subsection of the statute. Nevertheless plaintiff as I understand it alleges that Murata–Japan's manufacture of the allegedly infringing products induced Murata–America's § 271(a) & § 271(g) infringement *vis-a-vis* Murata–America's sales and importation respectively.

Japanese exporters who in turn sold the goods to distributors located in the United States. Okabe, like Murata–Japan, had no control over sales or sales methods within Virginia, never communicated with Virginia, and manufactured no goods in Virginia. The court stated:

> While the court is sympathetic to [the] argument that an alien company should be required to answer suit in any district where its goods are resold after it has sold to exporters with knowledge that the goods will be shipped to the United States, *it simply cannot so hold with in the context of [subsection] (A)(3) in the absence of affirmative acts [in Virginia] tending to induce infringement.*

*Marston,* 351 F.Supp. at 1125 (Emphasis supplied).

Although sales by Murata–America are alleged to have occurred in Virginia, no affirmative acts by Murata–Japan in this regard are cited by plaintiff. Murata–Japan, on the other hand, has submitted declarations from Murata–Japan and Murata–America executives attesting that Murata–Japan has no involvement in Virginia distribution. Therefore, as the record is devoid of any Murata–Japan affirmative acts in Virginia which aided or abetted the alleged infringement, subsection (A)(3) of the Long–Arm is ineffectual.

■ However, the facts satisfy the language of subsection (A)(4) which provides for the exercise of *in personam* jurisdiction over a defendant causing tortious injury in Virginia "by an act or omission outside the State." It applies to non-resident corporations causing tortious injury in Vir-

ginia as a result of acts occurring outside the state. Murata–Japan's manufacturing of the infringing facsimile machines and subsequent sale of them to Murata–America, occurring in Japan, which according to plaintiff induced Murata–America's infringement, satisfy the requisite 'act outside the state' language.[8]

Thus, Subsection (A)(4) of the Virginia long-arm applies to Murata–Japan's manufacturing and sale to Murata–America of facsimile machines in Japan, which allegedly induced tortious patent infringement in Virginia. Accordingly, the first part of the dual long-arm jurisdiction analysis is satisfied.

### B. Due Process Considerations

■ The second part of the Long–Arm inquiry asks whether Virginia may exercise jurisdiction over Murata–Japan under the Due Process Clause. The Due Process clause of the Fourteenth Amendment limits the power of a state court to render a valid personal judgement against a nonresident defendant. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980), *citing Kulko v. California Superior Court,* 436 U.S. 84, 91, 98 S.Ct. 1690, 1696, 56 L.Ed.2d 132 (1978).[9] It authorizes a court to exercise personal jurisdiction over a nonresident defendant whom purposefully established certain 'minimum contacts' with the forum state. *International Shoe v. Washington,* 326 U.S. 310, 316 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Application of the rule varies with the nature and quality of the contacts, but in each case, there must "be

---

**8.** Subsection (A)(4) also dictates that the nonresident tortfeasor must derive "substantial revenue from goods used or consumed" in Virginia. *See* Va.Code Ann. § 8.01–328.1(A)(4) (Supp.1992). However, this language is nothing more that an attempt by the Virginia legislators to codify what they perceived as Due Process limitations on long-arm jurisdiction since they intended the Long–Arm to give jurisdiction over non-residents to the extent permitted by Due Process. *See Marston,* 351 F.Supp. at 1125. As such, the second prong of the long-arm jurisdiction analysis dealing with Due Process limitations, accomplishes what this provision contemplated.

**9.** Federal courts can obtain jurisdiction only over defendants who can be properly served under Rule 4(e) which regulates the extra-territorial reach of a federal court over out-of-state defendants. Rule 4(e) authorizes effective service only upon corporations over which the state's could exercise personal jurisdiction. Thus, the reach of the United States District Court for the Eastern District of Virginia over non-resident corporations is co-extensive with that of the state courts. *See* Rule 4(e). Accordingly, the Virginia Federal court personal jurisdiction analysis becomes identical to that of a State court, thus implicating Fourteenth Amendment consideration.

some act by which the defendant 'purposefully avails' itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protection of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). *The exercise of that privilege gives rise to certain obligations arising out of the in-state activities, requiring a corporation to respond to a suit related to those affairs. See International Shoe v. Washington*, 326 U.S. at 319, 66 S.Ct. at 159. Therefore, once a defendant 'purposefully directs' his activities at residents of the forum, and the litigation results ·from alleged·injuries that "arise out of or relate to those activities", a court may exercise 'specific' jurisdiction over that defendant in harmony with Due Process of Law.[10] *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 1872, n. 8 (1984). To that end, the court must focus on the "relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 2580, 53 L.Ed.2d 683 (1977). Nevertheless, whether in fact a defendant purposefully established the requisite 'minimum contacts' in the forum state, remains the constitutional touchstone. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 2183 (1985).

The Court finds that Murata–Japan closes no sales and performs no services in the Commonwealth of Virginia. It maintains no offices or bank accounts in Virginia, and all shipments of facsimile machines made by Murata–America · are shipped to ports in states other than Virginia. All advertising, marketing, and distribution of Murata–Japan facsimile machines in Virginia is controlled solely by Murata–America. In short, Murata–Japan's sole 'contacts' with Virginia, relating to the patent infringement, exist by virtue of the fact that (a) their American subsidiary serves the Virginia market and (b) their products

have allegedly caused tortious injury in that forum.

However, despite the apparent dearth of contacts, the court may nonetheless exercise *in personam* jurisdiction over Murata–Japan consistent with the 'minimum contacts' requirements of Due Process if it can pierce the corporate veil and attribute Murata–America's Virginia contacts to its parent, Murata–Japan, or it finds that Murata–America placed its goods into the stream of commerce purposefully directing them towards the Virginia marketplace causing injury to·the plaintiff. *Reynolds Metals Co. v. Columbia Gas System, Inc.*, 669 F.Supp. 744, 748 (E.D.Va.1987).

### (1) *Imputing Murata–America's contacts to the Murata–Japan*

Murata–America has consented to jurisdiction in Virginia based upon its sales, distribution, advertising and overall purposeful activity directed towards that State relating to Murata–Japan facsimile machines. If Murata–America's contacts can be attributed to Murata–Japan, then the jurisdictional hurdle can be vaulted.

The Supreme Court has held that "the activities of a subsidiary are not necessarily enough to render a parent [corporation] subject to a court's jurisdiction." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 705, n. *, 108 S.Ct. 2104, 2111, n. *, 100 L.Ed.2d 722 (1988), *citing Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333, 336–337, 45 S.Ct. 250, 251–252, 69 L.Ed. 634 (1925). The doing of business by a subsidiary in a state, without more, does not confer jurisdiction over the foreign parent. *Goldrick v. D.M. Picton Co.*, 56 F.R.D. 639, 641–2 (E.D.Va.1971). 'Control' over the conduct and affairs of the subsidiary is the essential element required before a court may 'pierce the corporate veil' and confer juris-

---

**10.** The basis known as 'specific' jurisdiction allows a state to exercise "personal jurisdiction over a defendant in a suit arising or related to the defendant's contacts with the forum." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473, n. 15, 105 S.Ct. 2174, 2182, n. 15, 85 L.Ed.2d 528 *quoting Helicopteros Nacionales de Columbia,*

*S.A. v. Hall*, 466 U.S. 408, 414, n. 9, 104 S.Ct. 1868, 1872, n. 9, 104 S.Ct. 1868 (1984). Conversely, "when a state exercises personal jurisdiction over a defendant in a suit not arising out of· or related to the defendant's contacts with the forum, the State has been said to be exercising 'general jurisdiction' over the defendant." *Id.*

diction over the foreign parent based upon the subsidiary's contacts. *Reynolds Metals Co. v. Columbia Gas System, Inc.,* 669 F.Supp. 744, 748 (E.D.Va.1987).

■ Courts must exercise this veil-piercing power 'reluctantly', and 'cautiously', and *"the burden of establishing a basis for the disregard of the corporate fiction rests on the party asserting such a claim." DeWitt Truck Brokers v. W. Ray Flemming Fruit Co.,* 540 F.2d 681, 683 (4th Cir.1976) (emphasis added). Therefore, "whether in fact the corporate veil should be pierced is necessarily a factual inquiry to be conducted on a case by case basis." *Keffer v. H.K. Porter Co., Inc.,* 872 F.2d 60, 65 (4th Cir.1989). Under *Keffer,* the following factors suggest the propriety of piercing the corporate veil: gross undercapitalization of the subsidiary; siphoning by the parent of the subsidiary's funds; non-functioning of the subsidiary's officers and directors; and absence of corporate records. *Id.*

■ Applying those principles to this case, plaintiff Loral Fairchild has failed to satisfy the requisite burden. The only allegations the plaintiff has made concerning Murata–Japan's relation to Murata–America's patent infringing Virginia activities is that Murata–America is a wholly-owned subsidiary of Murata–Japan and that the majority of Murata–America's directors, four of the seven, are Murata–Japan representatives. However, complete ownership of the subsidiary transacting forum business, alone, "is insufficient to disregard the corporate identity." *Reynolds,* 669 F.Supp. at 750. Furthermore, though Murata–Japan may in fact 'control' the Murata–America board, that does not necessarily create the relation of principle and agent between the parent and subsidiary. *See Certain-Teed Products Corp. v. Wallinger,* 89 F.2d 427, 434 (4th Cir.1937).

According to Murata–Japan's uncontested submissions in support of their motion, Murata–America is separately incorporated, fully-capitalized and an independently operated business entity. Murata–America controls its own day-to-day operations, sets its own management policies and maintains separate financial records, accounts and books. Furthermore, the subsidiary and parent share no office space, observe all corporate formalities, and Murata–America does not hold its offices or conduct out to the public as that of Murata–Japan. More importantly, with respect to the allegedly infringing facsimile machines, Murata–America has complete control over all dissemination of advertising and distribution to retailers in Virginia.

The record herein lacks any indication that Murata–Japan treats Murata–America's activities as that of its own or so pervasively runs the subsidiary as to justify disregarding their separate identities. In any event, Murata–Japan's controlling ownership entitles it to choose directors and set general policies for Murata–America without forfeiting the protection of the corporate veil. *See Newcomb v. Flower Industries, Inc.,* 814 F.2d 978, 980 (4th Cir.1987).

In short, plaintiff Loral Fairchild has failed to satisfy its burden of establishing the appropriateness of the courts piercing the corporate veil and imputing Murata–America's Virginia contacts to its Japanese Parent so as to justify the exercise of *in personam* over Murata–Japan. Thus, Virginia may not exercise personal jurisdiction over Murata–Japan based upon Murata–America's forum contacts.

### 2. *Stream of Commerce*

Plaintiff Loral Fairchild asserts that Murata–Japan's placing of facsimile machines into the 'stream of commerce', which ultimately carried the products into Virginia where they caused tortious patent infringement, established sufficient forum contacts, thus justifying the exercise of personal jurisdiction. Murata–Japan, in contrast, insists that this contact is too tenuous to support jurisdiction. Both parties, however, contend that *World–Wide Volkswagen, supra,* supports their respective arguments.

In *World–Wide Volkswagen,* plaintiff brought suit in Oklahoma for personal injuries arising out of an accident in Oklahoma

in which plaintiff's Audi automobile caught on fire when rear-ended by another automobile. The regional distributor and retail dealer who sold plaintiff the car in New York successfully challenged the power of the Oklahoma court to exercise jurisdiction. However, the Supreme Court, in its decision, provided the following dicta which applies to the case herein:

> If the sale of a product of a manufacturer ... is not simply an isolated occurrence, but arises from the from the efforts of the manufacturer or distributor to serve directly or indirectly the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has been the source of injury to its owners or to others. *The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State.*

*Id.*, 444 U.S., at 297–298, 100 S.Ct., at 559 (emphasis supplied).

The Supreme Court nevertheless dismissed the two *World–Wide Volkswagen* defendants. It held that although it was foreseeable that the car sold by the New York–New Jersey–Connecticut tristate dealer and the regional distributor would cause injury in Oklahoma, 'foreseeability' of causing injury in another state is not the 'benchmark' for establishing sufficient forum contacts. *World–Wide Volkswagen*, 444 U.S. at 295, 100 S.Ct. at 559. Instead, "the foreseeability that is critical to due process analysis ... is that the *defendant's conduct and connection with the forum state are such that [they] should reasonably anticipate being haled into court there.*" *Burger King*, 471 U.S. at 474, 105 S.Ct. at 2174, *citing World–Wide Volkswagen*, 444 U.S. at 286, 100 S.Ct. at 567 (emphasis added).

In determining when a defendant 'should reasonably anticipate' litigation in a particular forum, the Supreme Court draws from the reasoning behind the abovementioned 'purposeful availment' requirement. That basis "ensures that a defendant will not be hailed into a jurisdiction solely as a result of 'random' ... contacts or the unilateral activity of another." *Burger King*, 471 U.S., at 475, 105 S.Ct. at 2183, *citing Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 773, 104 S.Ct. 1473, 1477, 79 L.Ed.2d 790 (1984). Moreover,

> the focus on a defendant's own acts serves the underlying due process objective of fair notice, giving 'a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.'

*Chung v. Nana Development Corp.*, 783 F.2d 1124, 1127 (4th Cir.1986), *quoting World–Wide Volkswagen*, 444 U.S., at 297–8, 100 S.Ct., at 567.

In short, 'purposeful availment' provides a corporation with 'fair warning' that conducting those activities may subject them to suit in that forum. *World–Wide Volkswagen*, 444 U.S., at 298, 100 S.Ct., at 567. Under those circumstances, it is "presumptively not unreasonable to require [the corporation] to submit to the burdens of litigation in that forum." *Burger King*, 471 U.S., at 476, 105 S.Ct., at 2174. Stated another way, a defendant can 'reasonably anticipate' having to account in a jurisdiction for consequence that arise proximately from their deliberate activities which create a 'substantial connection' with the forum state. *See id.*, 471 U.S., at 474–475, 105 S.Ct., at 2183–2184.

In *Weight v. Kawasaki Motors Corp., U.S.A.*, 604 F.Supp. 968 (E.D.Va.1985), the court applied the 'stream of commerce' theory in a case similar to this one. *Id.* at 970. The court asserted jurisdiction over the Japanese manufacturer of a defective motorcycle which caused injury in Virginia under the 'stream of commerce' theory despite the fact that the foreign corporation sold all its motorcycles intended for the American market to its American subsid-

iary, f.o.b. Japan,[11] had no license to do business in Virginia, maintained no offices in that State, made no sales to local distributors, and shipped nothing into Virginia ports. *Id.*

The court pointed to the parents, KHI's, 96% ownership of the subsidiary's stock, a common board member between both corporations, and the fact that the owner's manual written by the Japanese parent describing the motorcycles sold to its subsidiary KUSA was written in English and stated the vehicles complied with United States safety standards. *See Weight,* 604 F.Supp. at 970. Additionally, nineteen Virginia retailers sold the KHI manufactured motorcycles distributed by KUSA. Accordingly, the court surmised that "it is clear that KHI knew and intended that many of the motorcycles manufactured by them would be purchased by consumers in Virginia and that this activity would have consequences in Virginia." *Id.*

Moreover, it found that KHI derived substantial economic benefits from KUSA's Virginia sales since KUSA produced profits for KHI from dividends paid to, and purchases of motorcycles made from, the parent. *Id.* Accordingly, the court determined that "the sale of motorcycles in Virginia bought from KHI constitute[d] a substantial source of revenue in actual dollar amounts." *Id.* That benefit derived by KHL from the Virginia market translated into protection by Virginia law. *See id.* It was immaterial "that the product was not placed directly in Virginia by KHI, but instead was marketed by one whom KHI could foresee would cause the product to enter Virginia." *Id.,* at 970–971. As the court explained:

> the fact a foreign parent conducts its marketing and distribution in the United States through an independent distribution system does *not* shield it from *in personam* jurisdiction.

*Id.,* at 971 (emphasis supplied); *See also Lasky v. Continental Products Corp.,* 569 F.Supp. 1225, 1227 (E.D.Pa.1983); *United States v. Toyota Motor Corp.,* 561 F.Supp.

354, 359 (C.D.Cal.1983). Due Process requirements are satisfied so "long as the foreign manufacturer knew and intended that its [products] would be sold in Virginia." *Weight,* 604 F.Supp. at 971.

The *Weight* court concluded in essence that KHI should have expected to be haled into a Virginia court for a suit relating to the products it manufactured which the American subsidiary distributed. Similarly, under *Weight,* the exercise of jurisdiction by Virginia over Murata–Japan comports with Due Process. In fact, employing the factors accentuated in that case, the reasons for exercising jurisdiction over Murata–Japan in this case are even more compelling.

First, parent–Murata–Japan owns not 96% but 100% of its subsidiary/distributor's stock. Second, Murata–Japan has majority representation on the subsidiary's board; in *Weight,* they had only one common board member. Third, although the record does not reveal the exact number of local retailers selling the Murata–Japan facsimile machines distributed by Murata–America or the total amount of economic benefit realized by Murata–Japan, advertisements taken from the *Washington Post,* submitted by the plaintiff, nonetheless indicate significant economic benefit on the part of Murata–Japan. This mass marketing of several different models of Murata–Japan facsimile machines in Virginia buttresses the belief that Murata–Japan derives substantial economic benefit from the sales by Murata–America in Virginia and through the initial purchases from the parent.

Moreover, Murata–Japan, in its reply papers, fails to dispute Plaintiff's allegation that Murata–Japan has "derived substantial economic benefit from the sale of the infringing products" or that the "infringing products were marketed by one whom [Murata–Japan] could foresee would cause the products to enter Virginia." (Defendant's Reply at 13). According to *Weight,* this translates into receiving the protection of Virginia law "even though the product

---

**11.** F.O.B. or "free on board" indicates that title to the goods passes to the buyer and the seller relinquishes any risk of loss once the seller places the goods in transit.

was not placed directly in Virginia", by Murata–Japan, but instead was marketed by Murata–America, one whom Murata–Japan could foresee would cause the facsimile machines to enter Virginia. *See Weight,* 604 F.Supp. at 970–971. In addition, Murata–Japan, like the Japanese defendant in *Weight,* provides owners manuals with the facsimile machines sold to Murata–America, that are written in English stating that the machines comply with United States technical requirements.

Murata–Japan's majority control of the Murata–America board coupled with the amount and intensity of the subsidiary's Virginia distribution efforts illustrate that Murata–Japan could specifically foresee the product entering Virginia and impacting consumers in that forum. In addition, Murata–Japan derived substantial economic benefit from the Virginia sales and protection of Virginia laws. In total, Murata–Japan knew it had indirectly established contacts with the forum and intended such a result. Stated differently, Murata–Japan could have anticipated this lawsuit from its manufacture of infringing products sold by its distributor in Virginia. This in turn serves as "purposeful availment" and, under *World–Wide Volkswagen* and *Weight,* allows Virginia to exercise *in personam* jurisdiction over Murata–Japan is consistent with Due Process limitations under the 'stream of commerce' theory.

Nevertheless, Murata–Japan opposes application of the 'stream of commerce' theory and the *Weight* holding on two grounds. It claims that the Fourth Circuit narrowly interprets this basis, and that the *Weight* holding is distinguishable since it pertains to a products liability action causing physical injury. Murata–Japan contends that an infringing product is not the sort of 'defective' product which the *World–Wide Volkswagen* language contemplated. However, these contentions fail to detract from the suitability of *in personam* jurisdiction over Murata–Japan. In fact, the cases cited by Murata–Japan in support of these claims only serve to bolster the conclusion that Virginia may utilize the 'stream of commerce' basis to effect *in personam* jurisdiction over Murata–Japan.

Murata–Japan cites *Sowards v. Switch Energy, Co., Inc.,* 744 F.Supp. 1399 (W.D.Va.1990) for the proposition that 'stream of commerce' is narrowly interpreted in the Fourth Circuit. In that case, the court refused to assert jurisdiction under the 'stream of commerce' theory against a Kentucky electrical supplier, Cumberland, which allegedly contributed to a trespass by delivering power to another defendant knowing that it would be conducted across Soward's land without Soward's authority. *Id.* at 1401. The court however had no evidence that Cumberland knew the power it supplied to the other defendant would be routed across the plaintiff's land. *Id.* Moreover, Cumberland erected no transmission lines beyond the Kentucky border into Virginia, thus, belying the plaintiff's claim that they 'purposefully directed' activities towards Virginia. *Id.* In addition, the court did not regard electrical power as a 'defective product' for 'stream of commerce' purposes. *Id.*

In contrast, Murata–Japan made no attempt to prevent its products from having consequences in Virginia. Furthermore, it cannot be said that Murata–Japan lacked knowledge of Virginia consequences as Cumberland did in *Sowards.*

While the Fourth Circuit has yet to apply the the "stream of commerce" theory outside the defective product context, other circuit and district courts have exercised jurisdiction over foreign manufacturers of patent infringing products pursuant to the 'stream of commerce' logic. For example, in *Knoll International, Inc. v. Continental Imports, Inc.,* 192 U.S.P.Q. 644 (E.D.Pa.1976) utilized that logic in exercising jurisdiction over the Italian manufacturer of infringing furniture. Continental had neither any offices, employees, bank accounts, nor any other indica of business in the Pennsylvania forum. The defendant, however, manufactured and sold the infringing product in Italy to another defendant in Italy, who in turn, distributed the product in the United States. Continental, like Murata–Japan, did not ship the product directly into the forum and title passed overseas.

Nevertheless, the court upheld jurisdiction over the patent infringing foreign defendant noting that Continental has "indirectly pursued his business interests in this Commonwealth since the indirect shipment of merchandise constitutes 'doing business' within the ... limits of due process." *Id.,* at 646; *See also Honeywell, Inc. v. Metz,* 509 F.2d 1137 (7th Cir.1975) (Court held that German manufacturer of infringing flash units, shipped f.o.b. to United States and sold exclusively by two independent distributors in United States, knew they would be sold in United States and purposefully promoted American sales ensuring infringement would take place; although defendant may not have entered Illinois, it placed its products into the 'stream of commerce' under such circumstances that it should have anticipated that injury through infringement would occur there). Thus, courts have utilized the 'stream of commerce' theory against patent infringing foreign manufacturers, deeming those types of products as defective as those causing other sorts of injuries.

Notwithstanding the above, Murata–Japan contends that under the circumstances, the exercise of jurisdiction would impose an unreasonable burden upon them. This argument stems from the Supreme Court's acknowledging that once it is determined that minimum contacts exist with the forum, the reasonableness of the assertion of personal jurisdiction may be considered in light of other factors to determine whether it would comport with "traditional notions of fair play and substantial justice." *Burger King,* 471 U.S., at 476, 105 S.Ct., at 2184, *quoting International Shoe,* 326 U.S., at 320, 66 S.Ct., at 160. These factors include "the burden on the defendant"; "the interests of the forum state in adjudicating the dispute"; "the plaintiff's interest in obtaining the most efficient resolution of controversies"; and "the shared interest of the several states in furthering fundamental substantive social policies." *World–Wide Volkswagen,* 444 U.S., at 292, 100 S.Ct., at 564.

However, "where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction,

he must present a compelling case" to render jurisdiction unreasonable. *Burger King,* 471 U.S. at 477, 105 S.Ct., at 2185. Because Murata–Japan has failed to satisfy that burden, the exercise of *in personam* jurisdiction over them remains reasonable and in harmony with Due Process considerations.

Finally, Murata–Japan maintains that the litigation would impose an extreme burden on the foreign corporation since its employees would be required to travel from Japan to New York. Any inconvenience that Murata–Japan may suffer must be weighed against a public policy which favors providing a forum for an injured resident to bring an action against a non-resident manufacturer. *See Weight,* 604 F.Supp. at 971. In light of the fact that the depositions of Murata–Japan personnel will likely occur in Japan, the Court finds that any inconvenience to Murata–Japan in defending this lawsuit is outweighed by public policy considerations.

## IV.  CONCLUSION

Based upon the foregoing, the motion to dismiss the complaint against Murata Machinery, Ltd. is hereby denied.

So Ordered.