**LANGHAM–HILL PETROLEUM INC.,**
**Plaintiff/Appellee,**

v.

**SOUTHERN FUELS COMPANY, Defendant/Appellant (Two Cases).**

**Nos. 86–1596(L), 86–1632.**

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 13, 1986.

Decided March 19, 1987.

Benjamin Lipsitz, Baltimore, Md., on brief, for defendant/appellant.

David Michael Kopstein (DiSalle and Staudinger, Washington, D.C., on brief), for plaintiff/appellee.

Before WIDENER and CHAPMAN, Circuit Judges and ROBERT E. MAXWELL, United States District Judge, sitting by designation.

CHAPMAN, Circuit Judge:

Southern Fuel Company (Southern) appeals an order of summary judgment against it for breach of an oil purchase contract and from an award of attorneys fees under Fed.R.Civ.P. 11 which award was granted after notice of intent to appeal the summary judgment order had been filed. Southern's primary contention, which this court rejects, is that the action of Saudi Arabia, which led to a dramatic drop in world oil prices, falls within the scope of the contract's *force majeure* or Act of God clause, thereby validating Southern's refusal to honor the contract. Southern also questions the jurisdiction of the district court to award attorney's fees under Fed.R.Civ.P. 11 after notice of appeal has been filed. We find that the court does retain such jurisdiction.

## I.

Southern and Langham-Hill Petroleum, Inc., (Langham-Hill) are both in the business of buying and selling large quantities of petroleum products. In October, 1985, the parties entered into a fixed price contract under which Southern agreed to purchase 100,000 barrels (4,200,000 gallons) of No. 2 Fuel oil in four monthly installments. The contract states that the price of the oil was $0.83 per gallon. The dispute is centered upon paragraph 7 of the agreement of sale, a *force majeure* clause written in boilerplate language.[1]

The first three monthly shipments of oil were purchased by Southern as agreed. In January of 1986, the price of crude oil in the world market collapsed as a result of Saudi Arabian attempts to regain its share of the world oil market. In a letter dated January 14, 1986, Southern informed Langham-Hill that based upon the drop in world oil prices caused by the Saudi Arabians, who were "outside Southern's control," Southern was invoking the *force majeure* clause and would not perform the remainder of its obligations under the contract.

Langham-Hill, invoking the district court's diversity jurisdiction, alleged a cause of action for breach of contract. The district court granted Langham-Hill's motion for summary judgment holding that the fall of oil prices in the world market did not relieve Southern Oil from its obligations under the contract. The court found the measure of damages under U.C.C. § 2–708(1) to be the difference between the market price at the time and place of expected tender and the unpaid contract price. This formula yields $306,075.00 in actual damages. The district court also stated that it was willing to entertain a petition by Langham-Hill for attorney's fees and costs pursuant to Fed. R.Civ.P. 11. Southern appealed. The day after Southern filed its notice of intent to appeal, Langham-Hill filed a petition for attorney's fees and costs pursuant to Fed. R.Civ.P. 11. The district court awarded attorney's fees to Langham-Hill. Southern also appealed this ruling and the issues were consolidated into one appeal.

## II.

A grant of summary judgment is appropriate only when there is no genuine dispute as to any material fact and the moving party is entitled to a judgment as a matter of law. Any doubts as to the existence of a genuine issue of material fact will be resolved against the movant, in this case, Langham-Hill. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

Southern argues that questions of fact exist regarding its helplessness in the face of Saudi Arabian action and its inability to remain in business if it had satisfied the contract. Despite our sympathy for its plight, the law of contracts and the realities of the business world lead us to reject Southern's contentions.

This court has previously expressed some opposition to efforts by a party to a

---

**1.** This clause states: If either party is rendered unable by force majeure, or any other cause of any kind not reasonably within its control, wholly or in part, to perform or comply with any obligation or condition of this Agreement, upon such party's giving timely notice and reasonably full particulars to the other party such obligation or condition shall be suspended during the continuance of the inability so caused and such party shall be relieved of liability and shall suffer no prejudice for failure to perform the same during such period; provided obligations to make payments then due for products delivered hereunder shall not be suspended. The cause of the suspension (other than strikes or differences with workmen) shall be remedied so far as possible with reasonable dispatch. Settlement of strikes or differences with workmen shall be wholly within the discretion of the party having the difficulty. The party having the difficulty shall notify the other party of any change in circumstances giving rise to the suspension of its performance and of its resumption of performance under this Agreement. The term "force majeure" shall include, without limitation by the following enumeration, acts of God, and the public enemy, the elements, fire, accidents, breakdowns, strikes, differences with workmen, and any other industrial, civil or public disturbance, or any act or omission beyond the control of the party having the difficulty, and any restrictions or restraints imposed by laws, orders, rules, regulations or acts of any government or governmental body or authority, civil or military.

contract to characterize an act which results in price fluctuations as being outside its control, thereby rendering the contract unenforceable. " 'Shortage of cash or inability to buy at a remunerative price' cannot be regarded 'as a contingency beyond the seller's control.' " *Wheeling Valley Coal Corporation v. Mead,* 186 F.2d 219 (4th Cir.1950). If fixed-price contracts can be avoided due to fluctuations in price, then the entire purpose of fixed-price contracts, which is to protect both the buyer and the seller from the risks of the market, is defeated. Recently the Seventh Circuit in *Northern Indiana Public Service Company v. Carbon County Coal Co.,* 799 F.2d 265 (7th Cir.1986), dealt with a utility company's effort to escape a long-term, fixed-price coal contract through a declaratory judgment action. The court rejected the utility company's argument that a regulatory body's denial of a proposed rate increase makes the contract prohibitively expensive. The majority reasoned that:

> [the defendant] committed itself to paying a price at or above a fixed minimum and to taking a fixed quantity at that price. It was willing to make this commitment to secure an assured supply of low sulphur coal, but the risk it took was that the market price of coal or substitute fuels would fall. A *force majeure* clause is not intended to buffer a party against the normal risks of a contract. The normal risk of a fixed price contract is that the market price will change. If it rises, the buyer gains at the expense of the seller (except insofar as escalator provisions give the seller some protection); if it falls, as here, the seller gains at the expense of the buyer. The whole purpose of a fixed price contract is to allocate risks in this way. A *force majeure* clause interpreted to excuse the buyer from the consequences of the risk he expressly assumed would nullify a central term of the contract.

799 F.2d at 275. We agree with this reasoning and reject Southern's appeal.

▆▆▆ Southern also contends that summary judgment was inappropriate in this case because it did not receive an opportunity to be heard on the summary judgment

motion. There is no absolute requirement that a ruling on a motion for summary judgment be preceded by a hearing and, given the evidence presented, the district court did not err in deciding the motion without a hearing. *See Atkinson v. Bass,* 579 F.2d 865 (4th Cir.1978).

## III.

Finally, Southern argues that the district court erred in its award of attorney's fees to Langham-Hill. Under Fed.R.Civ.P. 11, the district court is empowered to render attorneys and represented parties responsible for reasonable fees incurred by other parties in response to arguments that are neither supported by fact nor warranted by existing law. Ruling on this motion after its final judgment and after notice of appeal had been filed by Southern, the district court found that Southern's use of the *force majeure* clause of the contract was an attempt to extricate itself from an unprofitable contract that was neither supported by fact nor warranted by existing law. The court found that Fed.R.Civ.P. 11 had been violated and held Southern and its attorney to be jointly and severally liable to Langham-Hill for $5,152.95 in attorney's fees.

Southern contends that the award of attorney's fees was improper because the district court does not retain jurisdiction of a case after a notice of appeal is filed. Southern argues that this court is bound by *Wright v. Jackson,* 522 F.2d 955 (4th Cir. 1975) which held that an assessment of costs must be made while the merits are before the district court, either prior to an appeal, or on remand after the questions of appeal have been settled.

Since the *Wright* opinion, the Supreme Court has considered this issue. In *White v. New Hampshire Department of Employment Security,* 455 U.S. 445, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982), the court ruled that a request for attorney's fees under the Civil Rights Attorney's Fees Awards Act of 1974, 42 U.S.C. § 1988 was valid four and one-half months after a consent decree was approved and a judgment entered by the

district court. The court reasoned that the request for attorney's fees raised issues collateral to the main cause of action. Attorney's fees are not compensation for the injury giving rise to the action and thus are not an element of relief. 455 U.S. at 452, 102 S.Ct. at 1166. Furthermore, as the court in *White* pointed out, were we to rule otherwise, litigants would request attorney's fees in every motion they argued out of fear that the motion would become the final judgment of the case thus precluding later requests. 455 U.S. at 453, 102 S.Ct. at 1167. The discretion of the trial judge will support denial of fees in cases in which a post-judgement motion unfairly surprises or prejudices the affected party. Piecemeal appeals will be avoided if district courts promptly hear and decide claims to attorney's fees. Such practice normally will permit appeals from fee awards to be considered together with any appeal from a final judgment on the merits. *See* 455 U.S. at 454, 102 S.Ct. at 1167.

Although this court has never dealt with this precise jurisdictional question, it has adopted *White* in other, similar, circumstances. *See Bernstein v. Menard,* 728 F.2d 252 (4th Cir.1984) (judgment was final before defendant sought attorney's fees and, therefore, plaintiff's appeal, filed within thirty days of fee award, but more than thirty days after the order of dismissal, was invalid because it was not timely). This court is bound by the Supreme Court's reasoning in *White.* Since this issue has never previously been clearly decided by this court, we feel that the appeal, on the whole, does not warrant the imposition of sanctions under Fed.R.App.P. 38 and, therefore, Langham-Hill's request for additional sanctions is denied.

Southern alternatively argues that attorneys fees are not merited in this case. This court will ordinarily give deference to the imposition of Rule 11 sanctions by a district court and will disturb such sanctions only if there has been an abuse of discretion. *Stevens v. Lawyers Mutual Liability Insurance Company of North Carolina,* 789 F.2d 1056 (4th Cir.1986). Given the great weight of authority in op-

position to Southern's assertion of the *force majeure* clause as a defense, we hold that the district court did not abuse its discretion in awarding attorney's fees under Rule 11.

The decision and order of the district court is therefore

AFFIRMED.