46 F.3d 1125
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Calvin E. LANGFORD, Plaintiff-Appellant,
v.
CITY OF PETERSBURG; Willie Williams, Police Chief,
individually and in his capacity as Police Chief; Beverly
Brewer, individually and in her capacity as former interim
City Manager, Defendants-Appellees.
 No. 94-1137.
 United States Court of Appeals, Fourth Circuit.
 Submitted Dec. 20, 1994.
Decided Jan. 18, 1995.
 
 Paul C. Bland, Petersburg, VA, for Appellant.
 Archer L. Yeatts, III, Yvonne S. Wellford, MALONEY, YEATTS & BARR, Richmond, VA, for Appellees.
 Before MURNAGHAN, WILKINS, and LUTTIG, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Calvin Langford appeals the district court's grant of summary judgment to the Defendants on his complaint alleging that his due process rights were violated in conjunction with his suspension without pay and subsequent termination from employment as a police officer. Finding no error, we affirm.
 
 
 2
 * Langford, a black male and former police officer with the City of Petersburg ("the City"), was one of sixteen officers accused of sexual misconduct by a prostitute. Police Chief Williams summoned each of the officers to a meeting in his office. After a thirty-minute wait, Langford met individually with Williams, at which time Langford was told of the prostitute's accusations, and he was given an opportunity to respond. Within the following two weeks, Williams sent Langford written notice of the accusations.
 
 
 3
 Approximately one month later, as the accusations were investigated, Williams told Langford in writing that he was considering recommending to the city manager that Langford be terminated. This memorandum also notified Langford that he could request a meeting with Williams to further respond. Langford obtained a meeting with Williams and defended himself against the allegations. The following day, Williams suspended Langford without pay pending the city manager's decision whether to terminate Langford.
 
 
 4
 Beverly Brewer, the interim city manager, subsequently requested a meeting with Langford to discuss options relating to the disciplinary process. Langford and his attorneys went to this meeting. Although there is a dispute over Brewer's willingness to discuss the allegations with Langford, it is clear that Brewer offered Langford a settlement which Langford declined to accept. Three days after this meeting, Langford's attorney wrote Brewer a letter reiterating Langford's position with respect to the allegations. The letter stated that the accusations were false and that the investigative techniques employed were questionable. Brewer terminated Langford the following day. The record reveals that all of the officers accused were suspended, but that only Langford and a white officer were terminated.
 
 
 5
 Langford subsequently commenced a civil action in state court seeking to expedite the internal grievance process. Langford did not, however, file an internal grievance until after he filed his state court action. The local judges recused themselves from hearing Langford's case. Accordingly, a judge from northern Virginia was appointed. This process took two months. After a hearing, this judge directed the parties, pursuant to city policy, to proceed with an administrative panel hearing to process Langford's grievance. The panel was to consist of three members. Langford and the City were each to select one member. The third member was to be selected by agreement of the first two panel members. The parties were not able to agree on this third member, however. Hence, pursuant to city policy, the judge appointed the third member--John Knight, a Henrico County Deputy Attorney. This party was selected from the City's proposed list.
 
 
 6
 Less than two weeks later, the panel hearing was conducted. Williams and Brewer testified about the sexual misconduct allegations before the panel. Further evidence was admitted, however, about Langford's personnel records which contained other unrelated evidence of prior misconduct. The panel subsequently recommended upholding the City's decision to terminate Langford.
 
 
 7
 Langford then filed the present action against Williams, Brewer, and the City of Petersburg. Langford alleged that the entire process surrounding his suspension, termination, and grievance panel procedure violated his right to due process. Langford also alleged that his equal protection rights were violated and that he was falsely imprisoned by Chief Williams. The district court granted summary judgment to the Defendants, and Langford timely appealed.
 
 II
 
 8
 This Court reviews a decision granting summary judgment de novo. Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir.1990). Under Fed.R.Civ.P. 56(c), summary judgment is appropriate when, resolving all doubts as to the existence of a material fact against the movant, see, e.g., Langham-Hill Petroleum, Inc. v. Southern Fuels Co., 813 F.2d 1327, 1329 (4th Cir.), cert. denied, 484 U.S. 829 (1987), and giving the non-moving party the benefit of all reasonable inferences from the evidence presented, no rational trier of fact could find for the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).
 
 
 9
 Langford first argues that his suspension, termination, and post-termination review all violated his due process rights. Public employees who can only be fired for cause are guaranteed procedural safeguards prior to termination of their employment. Where post-termination grievance procedures provide for a hearing before a neutral party, however, the procedural safeguards guaranteed need only provide the employee with "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546 (1985). These due process requirements are no greater for an employee who is suspended without pay. Garraghty v. Jordan, 830 F.2d 1295, 1300 (4th Cir.1987).
 
 
 10
 Langford argues that his pre-termination suspension without pay and subsequent termination violated due process because he did not first receive a hearing before Brewer, the ultimate termination authority. We reject this argument because, prior to his suspension, Langford received both oral and written notice of the specific allegations of sexual misconduct and their source. Langford was also given the opportunity to present his side of the story in a private meeting with Police Chief Williams, who had the authority to suspend Langford. Prior to his termination, Langford had at least three opportunities to defend his position before Williams. Additionally, prior to Langford's termination, Langford and his attorneys met with Brewer, the ultimate termination authority. While there is a dispute over the constitutional quality of this "hearing," such is irrelevant because it is clear that Langford was not entitled to a pre-termination hearing before Brewer. See Riccio v. County of Fairfax, 907 F.2d 1459, 1465 (4th Cir.1990). Langford received significant due process protection prior to his suspension and ultimate termination.
 
 
 11
 Langford next argues that the post-termination review procedure violated his due process rights. Langford argues that because the process does not have a self-executing timetable, his grievance panel hearing was delayed for an unreasonable amount of time. There is a point at which an unjustified delay in completing a post-deprivation hearing would become a constitutional violation. Federal Deposit Ins. Corp. v. Mallen, 486 U.S. 230, 242 (1988) (citing Loudermill, 470 U.S. at 547). To determine how long a delay is justified, however, we must "examine the importance of the private interest and the harm to this interest occasioned by delay; the justification offered by the Government for delay and its relation to the underlying governmental interest; and the likelihood that the interim decision may have been mistaken." Id.
 
 
 12
 We reject Langford's argument because the City offered adequate justification for the delay and Langford can show no harm to his interest because the panel ultimately decided to recommend upholding his termination. The initial two-month delay in conducting the panel hearing resulted from Langford's filing of a civil suit and the subsequent search for an out-of-town judge to hear the case. The subsequent two-month delay resulted from the parties' inability to agree on a third member to serve on the panel. The hearing was held only thirteen days after the third member was selected by the judge. Under these circumstances, Langford's due process rights were not violated and his claim was properly dismissed.
 
 
 13
 Langford also argues that his due process rights were violated at the panel hearing itself because he was not on notice of all the charges that would be used against him and because the panel was biased in favor of the City. At the panel hearing, the City submitted evidence containing disciplinary records from Langford's personnel file. Langford argues that the panel viewed this evidence as additional charges of misconduct to justify the termination. Langford's reliance on Bass v. Albany, 968 F.2d 1067 (11th Cir.1992), to support his position, however, is misplaced. In Bass, the grievant was a former police officer who was terminated after engaging in a high speed chase with a suspect and using excessive force to ultimately apprehend the suspect. Id. at 1068. The stated reason for the his termination was his use of excessive force. Id. at 1069. At the subsequent panel hearing, however, the City introduced evidence of other misconduct surrounding the incident. This evidence included the grievant's improprieties in conducting the car chase, using a weapon, and filing the police report. The court held that the grievant was not on notice of those charges. Id.
 
 
 14
 Unlike the grievant in Bass, however, Langford was on notice of the other evidence introduced before the panel hearing. The reports of prior misconduct were part of Langford's personnel file, and Williams's written invitation for Langford to inspect his file prior to the panel hearing should have placed Langford on notice that the contents of the file might be brought before the panel. Hence, Langford cannot validly claim that he was not on notice of this prior misconduct or that the panel might consider this evidence.
 
 
 15
 We similarly reject Langford's argument that the panel was unconstitutionally biased in favor of the City. Langford and the City each selected one of the panel members. When these two panel members could not agree on the selection of a third member, the judge appointed to hear Langford's state court case selected John Knight as the third member from a list proposed by the City. Langford argues that this resulted in a panel that effectively had two members selected by the City and was, therefore, biased against him.
 
 
 16
 Administrative panel members are entitled to a presumption of honesty and integrity. See Richardson v. Eastover, 922 F.2d 1152, 1161 (4th Cir.1991). To overcome this presumption, a litigant must demonstrate extrajudicial bias. Id. Langford has failed to make such a showing. Langford's reliance on a rumor that Knight was friends with the city attorney and his conclusory allegations that Knight showed deference to the other panel member selected by the City fail to create a material factual dispute concerning the existence of extrajudicial bias. Hence, the district court properly dismissed this claim.
 
 III
 
 17
 Langford argues that his termination from employment amounted to racial discrimination in violation of the Equal Protection Clause. To establish such a claim, a plaintiff must first show that similarly situated persons are subject to disparate treatment. United States v. Roberts, 915 F.2d 889, 891 (4th Cir.1990), cert. denied, 498 U.S. 1122 (1991). We reject Langford's contention because, of the sixteen employees accused of sexual misconduct with prostitutes, it appears from the record that eight were black and eight were white. Ultimately, Langford and a white officer were terminated. Hence, there was no disparate treatment amongst those similarly situated to Langford.
 
 
 18
 Langford concedes that black and white officers in the department were treated equally with respect to these specific allegations of sexual misconduct. He argues, however, that Chief Williams was notified that two white officers conducting the internal investigation might have participated in some separate incidents of sexual misconduct. Langford argues, therefore, that his equal protection rights were violated because there is no evidence that Williams investigated these allegations against the white officers. This argument is meritless.
 
 
 19
 As previously stated, everyone accused, regardless of race, was equally investigated, suspended, and terminated by the department. Langford and the officers at issue in the subsequent allegations were not similarly situated and Langford cannot create disparate treatment from these allegations. Moreover, Langford has not shown any evidence that Chief Williams had a discriminatory purpose for his alleged failure to investigate the officers. See United States v. Bynum, 3 F.3d 769, 774 (4th Cir.1993), cert. denied, 62 U.S.L.W. 3552 (U.S.1994). Hence, this claim was properly dismissed.
 
 IV
 
 20
 Finally, we reject Langford's argument that he was falsely imprisoned by Chief Williams during a scheduled meeting with all officers accused of sexual misconduct. Each officer was ordered to report to Williams's office at a specified time, and then wait to be called for an individual meeting. As Langford was waiting to be called, another officer was told that he could only go to the restroom if he had an escort. Langford testified that he then knew he was not free to leave and he did not challenge this because he did not wish to lose his job. Langford argues that he was falsely imprisoned for thirty minutes before he met with Williams.
 
 
 21
 To establish false imprisonment in Virginia, a plaintiff must show that his liberty was restrained without sufficient cause. Zayre of Virginia, Inc. v. Gowdy, 147 S.E.2d 710, 713 (Va.1966). The plaintiff need not have been physically restrained, it is sufficient that he has a reasonable apprehension that force will be used against him unless he willingly submits, and he does submit to the extent he is denied freedom of action. Id.
 
 
 22
 The City argues that Langford was not imprisoned because by his own admission he could go to the restroom. This argument is flawed because Langford needed an escort to use the restroom and, therefore, he could still be falsely imprisoned within the building. The City argues alternatively, that even if Langford's liberty was restrained, Chief Williams had the authority to do so by virtue of being Langford's employer. This argument is not tenable and the City offers no legal support for it.
 
 
 23
 Under the facts contained in the record, however, we find that Langford was not falsely imprisoned because although he apparently needed an escort to use the restroom, there is no indication that he would be subjected to physical force if he left the building. In fact, Langford admits that he stayed only because he did not wish to lose his job, not because he feared physical force. Under these circumstances, Langford was free to leave the building, and challenge any negative employment consequences of that decision in an internal grievance. This does not amount to false imprisonment. See Strachan v. Union Oil Co., 768 F.2d 703 (5th Cir.1985).
 
 
 24
 We therefore affirm the judgment of the district. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.
 
 AFFIRMED