### In re MILLERS COVE ENERGY COMPANY, INC., Debtor.

### MILLERS COVE ENERGY COMPANY, INC., Darrell Barnwell, Hubert Barnwell, Judy Barnwell, Carolyn Petrey, Susan Kincaid, and Mt. Airy Farms, Plaintiffs–Appellants,

v.

### Ronald MOORE, Ark Land Company, and Ronald, Ruby, and Robert Moore as Executors of the Estate of Royce Moore, Defendants–Appellees.

No. 94–5572.

United States Court of Appeals, Sixth Circuit.

Argued May 11, 1995.

Decided Aug. 10, 1995.

Rehearing and Suggestion for Rehearing En Banc Denied Sept. 26, 1995.

William T. Ramsey (argued and briefed), Neal & Harwell, Nashville, TN, C.R. Bolling (briefed), Bolling & Hearl, Richlands, VA, Dave B. Jordan (briefed), David B. Jordan, Jr., Dave B. Jordan, P.C., Kingsport, TN, for Millers Cove Energy Co., Inc., Darrell Barnwell, Hubert D. Barnwell, Judy Barnwell, Susan M. Kincaid.

William T. Ramsey, Neal & Harwell, Nashville, TN, C.R. Bolling, Bolling & Hearl, Richlands, VA, Dave B. Jordan, Dave B. Jordan, P.C., Kingsport, TN, for Carolyn B. Petrey and Mt. Airy Farms.

James A. McIntosh, Baker, Donelson, Bearman & Caldwell, Knoxville, TN, Emmitt Yeary, Yeary, Tate, Lowe & Jessee, Abingdon, VA, Jeffrey A. Sturgill, Sturgill, Mullins & Kennedy, Wise, VA, George Todd East (argued and briefed), Kingsport, TN, for Ronald L. Moore, Ruby Moore and Robert Moore.

John A. Lucas, Hunton & Williams, Knoxville, TN, James A. McIntosh, Baker, Donelson, Bearman & Caldwell, Knoxville, TN, Emmitt Yeary, Yeary, Tate, Lowe & Jessee, Abingdon, VA, Jeffrey A. Sturgill, Sturgill, Mullins & Kennedy, Wise, VA, George Todd East, Kingsport, TN, for Ark Land Co.

Before: SUHRHEINRICH and DAUGHTREY, Circuit Judges; ZATKOFF,* District Judge.

PER CURIAM.

This matter is before the Sixth Circuit on plaintiffs-appellants, Millers Cove Energy Company, Inc., Darrell Barnwell, Hubert Barnwell, Judy Barnwell, Carolyn Petrey, Susan Kincaid, and Mt. Airy Farms (collectively referred to as "Millers Cove"), appeal from a district court decision affirming the conclusion of the bankruptcy court that the plaintiffs' complaint in an adversary proceeding should be dismissed. In that adversary

---

* The Honorable Lawrence P. Zatkoff, United States District Judge for the Eastern District of Michigan, sitting by designation.

proceeding, Millers Cove sought a determination that coal mining leases with the defendants, Ronald Moore, individually, Ark Land Company, and Ronald, Ruby, and Robert Moore, as co-executors of the last will and testament and estate of Royce Moore ("the Moores"), had been terminated by the Moores' alleged failure to abide by the terms of the leases. We affirm in part, reverse in part, and remand for further proceedings on damages.

## I.

In September 1975, Millers Cove's predecessors-in-interest leased the Moores approximately 7,000 acres of mineral lands in Virginia and Kentucky. Pursuant to the 40-year, renewable lease agreement, the Moores were to pay an annual minimum royalty fee of $50,000 for the mining rights on the lands. In addition, royalty payments of 75 cents per ton of coal mined were to be paid to the lessors, with the annual minimum royalty payments to be credited toward the per ton payment. Paragraph VII of the leases provided:

> The Lessee agrees to promptly begin operations and carry on the coal operation with reasonable dispatch and in accordance with State and Federal mining laws. In the event of strikes, unfavorable weather conditions *or any other cause beyond the cause of the Lessee,* the Lessee shall be excused from carrying on the business until the aforesaid conditions have abated or until they should have been abated by the lessee.

Joint Appendix 130, 146 (emphasis added).

The Moores performed under the leases without incident from 1975 until 1978 when a United Mine Workers' strike brought mining activities to a halt. Shortly thereafter, the Moores were forced into Chapter 11 Bankruptcy and subleased their interest in the leases to Virginia Partners, Ltd. The sublease required Virginia Partners to abide by the terms of the Millers Cove lease, but it also provided that Virginia Partners was "to remove all the ... coal" that could "be mined and marketed at a profit ... with economic practicability ("feasibility")." Joint Appendix 163.

Virginia Partners mined little coal between 1979–1981. Thus, in May 1982, the Moores brought an action in the U.S. District Court for the Western District of Virginia to terminate the sublease because Virginia Partners was not mining despite economic feasibility. In April 1986, that court dismissed the suit without prejudice. In July 1987, the Moores re-filed the action. On September 8, 1987, the Virginia court terminated the sublease, and the mining obligation under the original lease reverted to the Moores.

On April 5, 1989, Millers Cove sent the Moores a notice of termination of the original leases because the Moores allegedly "breached the express and implied obligations to develop and mine the leased property" pursuant to Paragraph VII of the agreements. The Moores reacted by filing a complaint in the Circuit Court for Lee County, Virginia, seeking a declaration that the leases were in full force and effect. While that suit was pending, Millers Cove was involuntarily placed in Chapter 7 Bankruptcy. On November 30, 1990, an Order of the bankruptcy court converted that to a Chapter 11 proceeding.

After a bench trial, the bankruptcy court entered judgment for the Moores after finding that the Moores had not breached the terms of the leases. The bankruptcy court found that although the Moores did not mine the property with reasonable dispatch as the lease required, the Moores were excused from mining the property because mining was not economically feasible.

On September 9, 1993, the bankruptcy court granted Millers Cove's motion to amend judgment. On September 22, 1993, the bankruptcy court vacated the amended judgment and reinstated its original judgment in its entirety. The district court affirmed the bankruptcy court.

## II.

This court reviews a bankruptcy court's conclusions of law *de novo* and its findings of fact for clear error. *In re Omegas Group, Inc.,* 16 F.3d 1443, 1447 (6th

**158**

Cir.1994). Further, as explained in *In re Omegas Group, Inc.:*

> The court accords discretion in reviewing only the original bankruptcy court findings, not those included in the decision rendered by the district court, since "[t]his court is 'in as good a position to review the bankruptcy court's decision as is the district court.'" *In re G.S.F. Corp.*, 938 F.2d 1467, 1474 (1st Cir.1991)(quoting *Sambo's Restaurants, Inc. v. Wheeler (In re Sambo's Restaurants, Inc.)*, 754 F.2d 811, 814 (9th Cir.1985)).

*Id.*

### III.

▉ The resolution of the interpretation of the lease provisions is governed by Virginia law. As the bankruptcy court held, the leases require the payment of a minimum royalty and a duty to mine with reasonable dispatch. Thus, the bankruptcy court correctly rejected the Moores' contention that paying minimum royalties would ensure the continuation of the lease. *Coal Resources, Inc. v. Gulf & Western Indus.*, 865 F.2d 761, 766 (6th Cir.1989).

▉ On appeal, Millers Cove challenges the bankruptcy court's finding that "the inability of the Moores to mine the property profitably constituted 'cause' under the 'or any other cause' provision of paragraph VII of the leases sufficient to excuse the Moores from mining the property." Joint Appendix 224. Millers Cove contends that the bankruptcy court's interpretation is erroneous because economic feasibility clauses operate only when specifically included in coal leases. No economic feasibility clauses were included in the Millers Cove–Moores' leases.

Courts and commentators generally refuse to excuse lack of compliance with contractual provisions due to economic hardship, unless such a ground is specifically outlined in the contract. Virginia courts have recognized that absent a clause to the contrary, the lack of economic feasibility does not excuse the duty to mine under a contract:

> It is, of course, competent for a lessor to confer upon the lessee the right to operate only so long as he can make a profit, but this right must be clearly provided for.

*Home Creek Smokeless Coal Co., Inc. v. Combs*, 204 Va. 561, 571, 132 S.E.2d 399 (1963)(quoting *Clintwood Coal Corp. v. Turner*, 133 Va. 464, 474, 114 S.E. 117 (1922)).

Similarly, the Fourth Circuit has held that the *force majeure* clause of a fixed-price contract does not excuse performance because of a dramatic drop in world oil prices. *Langham–Hill Petroleum, Inc. v. Southern Fuels Co.*, 813 F.2d 1327 (4th Cir.1987)(relying on *Northern Indiana Public Service Co. v. Carbon County Coal Co.*, 799 F.2d 265, 275 (7th Cir.1986)). And, in addressing whether a party can be excused from performance for lack of profit, a Delaware district court stated:

> Ordinarily, only where a force majeure clause specifically includes the event alleged to have prevented performance, will a party be excused from performance. This maxim is especially true where the event relied upon to avoid performance is a market fluctuation.... American courts have routinely refused to excuse performance under such a theory, even where the force majeure clause, unlike the one in question here, presents potential ambiguities.

*United States v. Panhandle Eastern Corp.*, 693 F.Supp. 88, 96 (D.Del.1988) (citation omitted). Millers Cove's position is further supported in 54 Am.Jur.2d *Mines and Minerals* § 132 (1971):

> where there is a covenant, either express or implied, to work the mine during the term of the lease, it has generally been held that nonperformance is not excused by the fact that working the mine has become unprofitable.

The rule set forth in *Home Creek, Langham–Hill,* and *Panhandle Eastern* controls the instant case. Accordingly, the Moores were not excused from mining because it was not economically feasible.

The factual circumstances of this case demonstrate the Moore's knowledge of the rule. The economic feasibility clause included in the Virginia Partners sublease exposes the Moores' clear understanding of the sig-

nificance of an economic feasibility clause. Thus, if the Moores had wanted to escape the duty to mine because it was not profitable, the Moores should have included such a clause in the leases.

The Court finds that the bankruptcy court incorrectly interpreted paragraph VII. The lack of economic feasibility does not constitute cause to excuse the Moores from mining the lease properties with reasonable dispatch. Accordingly, the bankruptcy court's decision to excuse the Moores from mining is reversed. The case is remanded to the bankruptcy court for findings on damages.

### IV.

After the bankruptcy court's original decision, both parties agreed that the bankruptcy court should decide whether the Moores owed minimum royalties for the years during which this litigation was pending. On September 9, 1993, the bankruptcy court issued an amended order awarding Millers Cove $150,000 for minimum royalties due from 1990, 1991, and 1992. When both parties contested this amended order, the bankruptcy court vacated its amended order.

Millers Cove argues that the bankruptcy court was bound to decide the issue under Bankruptcy Rule 7015 (which incorporates Fed.R.Civ.P. 15) and erred as a matter of law in vacating the amended order. Rule 15 permits the parties to amend their pleadings to conform with the evidence presented at trial. However, in this case, the issue of whether minimum royalties were due was not an issue at trial. Accordingly, additional evidence must be tendered before a just decision can be made. As Millers Cove's original motion to amend judgment was not properly before the bankruptcy court, the bankruptcy court did not err in vacating its judgment. The bankruptcy court's decision to vacate its amended order is therefore AFFIRMED.

### V.

Accordingly, the decision of the bankruptcy court is affirmed in part, reversed in part, and remanded to the bankruptcy court for a determination of damages.