**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

OTIS O. EDWARDS,
Plaintiff-Appellant,

v.

NEWPORT NEWS SHIPBUILDING AND

No. 98-1338

DRY DOCK COMPANY; LOCAL UNION
8888, UNITED STEELWORKERS OF
AMERICA,
Defendants-Appellees.

Appeal from the United States District Court
for the Eastern District of Virginia, at Newport News.
Jerome B. Friedman, District Judge.
(CA-97-46)

Submitted: November 10, 1998

Decided: December 7, 1998

Before MURNAGHAN and LUTTIG, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Sa'ad El-Amin, Beverly D. Crawford, EL-AMIN & CRAWFORD,
Richmond, Virginia, for Appellant. Dean C. Perry, NEWPORT
NEWS SHIPBUILDING & DRY DOCK COMPANY, Newport
News, Virginia; Daniel M. Kovalik, UNITED STEELWORKERS OF
AMERICA, AFL-CIO CLC, Pittsburgh, Pennsylvania, for Appellees.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Otis O. Edwards sued the Newport News Shipbuilding and Dry Dock Company ("Newport News") and United Steelworkers of America, Local Union No. 8888 (the "Union") under 42 U.S.C. § 1981 (1994), alleging race-based disparate treatment and discriminatory discharge. He now appeals from the district court's order granting summary judgment to Defendants, contending that the district court erred in determining that (1) Newport News did not discriminate against Edwards and (2) the Union did not make a deliberate choice against raising a discrimination claim on behalf of Edwards in his arbitration proceedings. We have reviewed the district court's opinion and the record and find no reversible error. Accordingly, we affirm.

I.

Edwards is an African-American male who was employed by Newport News from August 1, 1973, until his termination on June 24, 1996. Newport News has approximately 18,000 employees, of which approximately 11,000 are hourly employees represented by the Union. While working for Newport News, Edwards was assigned to Department X33, which is the Painting/Insulation Department. Richard Lyons, who is also African-American, is the supervisor of Department X33, and he has held that position for over thirty years.

Lyons discharged Edwards based on reports he received of an incident on June 18, 1996, involving Edwards' refusal to surrender his identification badge to Newport News security guards after the guards repeatedly asked Edwards for his badge. Roy Sinnott, a gate guard for Newport News, reported that, as Edwards was exiting through the gate at the end of the shift, Sinnott asked Edwards to open a black bag he was carrying so that Sinnott could see what was inside. According to Sinnott, Edwards rolled the bag as if to show that nothing was

2

inside. Sinnott grabbed the bag, felt something cylindrical, and challenged Edwards. Edwards then opened the bag, and Sinnott saw what appeared to be orange tubes similar to those used with air tools. According to Sinnott, Edwards offered him one hundred dollars to let him go and then ran away from the gate. Sinnott alerted other guards by radio and issued a description of Edwards.

Rodney Cumbo, another security guard, reported that he heard Sinnott's radio transmission and saw Edwards get into a car in the parking lot. Cumbo stopped Edwards' car and noticed a black bag on the passenger side floor. In response to Cumbo's questions, Edwards said that he was a Newport News employee. Cumbo then asked Edwards four times for his identification badge. Each time, Edwards refused, held his badge out of Cumbo's reach, and repeatedly asked Cumbo why he wanted it.

Cumbo also reported that J. Sadler, a guard supervisor, asked Edwards for his badge twice, but Edwards refused. Sadler told Edwards that the badge was company property and must be returned upon request. Edwards still refused to surrender the badge and drove away.

On June 19, Lyons informed Edwards that he was suspended pending discharge for violating Yard Rule 4, which subjects Newport News employees to discharge for "refusal to follow the instructions or directions of a foreman or supervisor." At Edwards' discharge meeting on June 24, Edwards stated that he was not the individual Sinnott encountered on June 18. He admitted that he refused to give up his badge, but he asserted that he was in a hurry to pick up his son and that the guards refused to explain their reason for requiring him to turn over his badge.

Edwards grieved his discharge though the grievance procedures under the applicable collective bargaining agreement. Edwards' grievance was denied at each stage of the grievance process, and the Union took his case to arbitration. The arbitrator found for Newport News and sustained the discharge.

At no time during any of the steps involved in the grievance process, or during the arbitration itself, did Edwards or the Union raise

3

any allegation that Edwards had been discharged because of his race. The only time the issue was raised by anyone during the pendency of Edwards' grievance was in a letter to the Union from Edwards' counsel mentioning "a potential discrimination claim." However, Edward's counsel sent another letter to the Union five days later asking that the first letter be disregarded.

II.

Edwards first challenges the district court's grant of summary judgment on his § 1981 claim. We review a decision granting summary judgment de novo. See Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). Under Fed. R. Civ. P. 56(c), summary judgment is appropriate where, resolving all doubts as to the existence of a material fact against the movant, see Langham-Hill Petroleum, Inc. v. Southern Fuels Co., 813 F.2d 1327, 1329 (4th Cir. 1987), no rational trier of fact could find for the plaintiff. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986).

With respect to discharge for violation of work rules, the plaintiff must first demonstrate by a preponderance of the evidence either that he did not violate the rule or that, if he did, similarly situated employees who were not members of a protected class engaged in similar acts and were not punished similarly. See Green v. Armstrong Rubber Co., 612 F.2d 967, 968 (5th Cir. 1980) (where disparity in punishment resulted from dissimilar conduct rather than racial animus, prima facie case is not demonstrated); Moore v. City of Charlotte, 754 F.2d 1100, 1105-06 (4th Cir. 1985) (plaintiff must demonstrate that his conduct resembled that of a similarly situated employee of another race and that he received more severe disciplinary measures than the other person); see also Stephens v. South Atl. Canners, Inc., 848 F.2d 484, 489 (4th Cir. 1988) (stating that § 1981 employs the same prima facie case as Title VII).

Edwards has conceded that he violated Yard Rule 4, but he asserts that white employees who violated the same rule were treated more leniently than he was. We find that Edwards failed to demonstrate disparate treatment between himself and a similarly situated white employee. Edwards points to Glen Hartley and Joseph Marushia and contends that these white employees were also charged with violating

4

Yard Rule 4 and that they were not as harshly disciplined. For the reasons that follow, we find that Hartley and Marushia were not similarly situated.

Although Marushia disobeyed a guard's direction to move his vehicle from a restricted parking area, he did so because he was in the middle of performing a job assignment that his immediate supervisor told him was an emergency. Marushia was initially discharged but, in light of the mitigating circumstances, the discharge was converted to a disciplinary suspension. Edwards, however, can cite no similar mitigating circumstance. His excuses -- that he was late to pick up his son and that the guards would not answer his questions -- were not work-related and, under the circumstances, were not reasonable. As such, Edwards failed to carry his burden of showing that he and Marushia were similarly situated for purposes of disparate treatment.

Hartley was discharged for refusing to follow a supervisor's instruction to perform a work assignment. However, after Newport News learned that the instruction might have required Hartley to work outside of his medical restrictions, Newport News reinstated Hartley without back pay. Edwards had no comparable reason for not following the guards' instructions, and his violation occurred during an investigation of theft of company property. See Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992) (to be similarly situated, individuals must have same supervisors and must have engaged in the same conduct without differentiating or mitigating circumstances).

Furthermore, the district court correctly considered the entire record before determining that Hartley and Marushia were not similarly situated employees. See Cook v. CSX Transp. Corp., 988 F.2d 507, 512 (4th Cir. 1993). Since January 1995, Lyons discharged five other employees in Department X33 (besides Edwards and Hartley) for violation of Yard Rule 4 -- three black and two white. Four of the five -- both of the white employees and two of the black employees -- were never reinstated. The fifth, a black employee, was subsequently reinstated without back pay. Regarding the company as a whole, since January 1991, Newport News has discharged thirty-nine hourly employees for Yard Rule 4 violations. Of these, ten were subsequently reinstated -- eight of whom were black and two of whom were white (Marushia and Hartley).

5

Given Newport News' overall treatment of Yard Rule 4 violations, we find that Edwards' use of Marushia and Hartley fails to satisfy his burden of demonstrating a prima facie case. Marushia and Hartley's violations were not sufficiently similar to Edwards', and Edwards has failed to demonstrate that the statistics regarding Lyons' and Newport News' disciplinary responses are either unreliable or misleading. Accordingly, because Edwards could not proffer a specific forecast of evidence which, when viewed in the light most favorable to him, would be sufficient to prove every material element of his claim, summary judgment was appropriately entered in favor of Defendants. See Guinness PLC v. Ward, 955 F.2d 875, 882-83 (4th Cir. 1992).

III.

Edwards next claims that the Union breached its duty of fair representation by failing to assert a claim of race discrimination using Hartley as a comparator. However, in order to establish a claim against the Union, Edwards must show (1) knowledge that prohibited discrimination may have occurred and (2) a decision not to assert the discrimination claim. See Goodman v. Lukens Steel Co., 482 U.S. 656, 669 (1987). In this case, Edwards failed to present evidence from which a reasonable jury could conclude that the Union possessed the requisite knowledge. As discussed above, Hartley was not similarly situated. Thus, even assuming knowledge of Hartley's reinstatement, this information does not form the basis for a claim of discrimination. Edwards presented no further evidence establishing that the Union knew of intentional discrimination by Newport News. Therefore, the district court correctly granted summary judgment on this issue as well.

Thus, we affirm the decision of the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

6