**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

MIE MARYLAND EXECUTIVE PARK
GENERAL PARTNERSHIP; LASALLE
LIMITED PARTNERSHIP; EDWARD A.
ST. JOHN,
Plaintiffs-Appellants,

v.

LASALLE NATIONAL BANK,

individually and as Trustee on
behalf of the Holders of MLIC
Commercial Mortgage Pass-Through
Certificates, Series 1996-1; LENNAR
PARTNERS, INCORPORATED; MIDLAND
LOAN SERVICES, INCORPORATED; JOHN
ENGEL; LEE C. CARTER,
Defendants-Appellees.

No. 99-2066

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Frederic N. Smalkin, District Judge.
(CA-99-1786-S)

Argued: April 5, 2000

Decided: May 22, 2000

Before WILKINSON, Chief Judge, and WILKINS and
WILLIAMS, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** William Fitts Ryan, Jr., WHITEFORD, TAYLOR & PRESTON, L.L.P., Baltimore, Maryland, for Appellants. Deborah Brand Baum, SHAW PITTMAN, Washington, D.C., for Appellees. **ON BRIEF:** Michael A. Stodghill, WHITEFORD, TAYLOR & PRESTON, L.L.P., Baltimore, Maryland, for Appellants. Elizabeth S. Becker, SHAW PITTMAN, Washington, D.C., for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

This case involves a dispute over whether the prepayment premium contained in a Promissory Note survived a subsequent Loan Modification Agreement. Plaintiffs argue that they are no longer bound by the premium. The district court disagreed and dismissed their suit. The district court also awarded defendants attorneys' fees. Finding no error in the proceedings below, we now affirm.

I.

In 1989, plaintiff Edward St. John provided financing for his office complex in Baltimore County, Maryland, by means of a $12.5 million non-recourse Promissory Note. The Note mandates that if St. John prepays the principal prior to 90 days before the Note maturity date of May 1, 2004, he must pay a substantial premium. A Deed of Trust further secured the loan by giving the defendants a lien on the property. The other plaintiffs in this case are LaSalle LP, the guarantor of the Note, and MIE Maryland Executive Park, the general partner of LaSalle LP. Defendants are LaSalle National Bank, the noteholder, Lennar Partners and Midland Loan Services, the loan's servicers, and John Engel and Lee Carter, the trustees.

For the next eight years, plaintiffs met their payment obligations under the original loan documents. In 1997, however, the project encountered financial difficulties. Negotiations ensued between St. John and Lennar, on behalf of LaSalle National Bank. The negotiations culminated with the execution of a Loan Modification Agreement, effective October 1, 1997. In the spring of 1999, St. John sought to refinance the property. His efforts were thwarted when defendants refused to release the lien. The sticking point was plaintiffs' contention that they no longer had to pay the prepayment premium. By April 1999, the premium consisted of more than $3 million.

On May 11, 1999, after the refinancing fell through, plaintiffs filed suit in the Circuit Court for Baltimore County, Maryland. They argued that the Note's prepayment premium did not survive the Loan Modification Agreement. In addition to their contract claims, plaintiffs brought promissory estoppel and breach of fiduciary duty claims. Defendants removed the case to the United States District Court for the District of Maryland and filed a Fed. R. Civ. P. 12(b)(6) motion to dismiss. On July 16, 1999, the district court granted this motion. On July 28, plaintiffs timely filed a Notice of Appeal. Two days later, defendants filed a motion with the district court seeking attorneys' fees pursuant to the Deed of Trust. The district court granted defendants' motion and awarded them $30,747.79 in fees. Plaintiffs appeal both the dismissal of their claims and the fee award.

II.

Plaintiffs argue that the district court erred by finding that the Note's prepayment premium survived the Loan Modification Agreement.

We disagree. The Loan Modification Agreement itself states that the terms of the original loan documents remain in full effect. Thus, unless a provision in the Loan Modification Agreement expressly modifies or alters the Note's prepayment premium, the premium remains in full force. And there is no reference to, much less a modification of, the prepayment premium in any provision of the Loan Modification Agreement.

The prepayment premium is not a peripheral provision of the Note which carries limited monetary consequence. Rather, as of April

3

1999, the premium stood at over $3 million -- a quarter of the Note's original amount. If plaintiffs, who were represented by legal counsel, had wished to replace, alter, or affect in any manner the prepayment premium, it would have been very easy for them to do so. They could have bargained with defendants to insert explicit language excising the premium. They chose not to do so. To now accept plaintiffs' argument would grant them a $3 million windfall.

Plaintiffs, however, point to two provisions in the Loan Modification Agreement that they argue infuse ambiguity into this issue. They first reference the agreement's overview section:"On or before maturity of the Note, the Borrower and Guarantor intend to sell or refinance the Property in order to repay all of the Indebtedness, including any deferred interest." Plaintiffs argue that this provision evinces an intent to allow prepayment without penalty. Even assuming that this provision contains such a general intent, it cannot trump the specific language of the Note's prepayment premium. As the district court properly noted, "a general statement of intent cannot render meaningless a specific, clear and unambiguous provision."

Plaintiffs next focus on article II.C.4(b) of the Loan Modification Agreement. This provision, however, merely gives St. John the ability to amortize principal on a limited basis. We cannot conclude that this provision, without even mentioning the Note's prepayment premium, serves as a general repeal of this premium.

Finally, in an effort to show that the parties intended to rescind the prepayment premium, plaintiffs seek to introduce evidence of conversations among the parties that occurred during the negotiations of the Loan Modification Agreement. But because we find the agreement clear and unambiguous on its face with respect to the continued existence of the prepayment premium, Maryland's parol evidence rule bars us from considering such extrinsic evidence. See, e.g., Trotter v. Lewis, 45 A.2d 329, 332 (Md. 1946). Moreover, the Loan Modification Agreement contains an integration clause, which even further "strengthens . . . the presumption of integration upon which the parol evidence rule proceeds." Rinaudo v. Bloom, 120 A.2d 184, 189 (Md. 1956).

4

Because the Loan Modification Agreement clearly does not affect the Note's prepayment premium, we conclude that the district court properly dismissed this suit.*

III.

Plaintiffs also make a series of challenges to the district court's award of $30,747.79 in attorneys' fees pursuant to the Deed of Trust. The Deed of Trust provides defendants "all costs and expenses . . . incurred by reason of any action, suit, proceeding, hearing, motion or application before any Court or administrative body in and to which the [defendants] may be or become a party by reason of this Deed of Trust . . . wherein proof of claim is by law required to be filed or in which it becomes necessary to defend or uphold the terms of this Deed of Trust . . . ."

Plaintiffs first argue that the district court lacked jurisdiction over defendants' motion for fees. But because the defendants' motion raised "issues collateral to the main cause of action," the district court retained jurisdiction to consider the motion regardless of the fact that the case on the merits had already been appealed. White v. New Hampshire Dep't of Employment Sec., 455 U.S. 445, 451 (1982); accord Langham-Hill Petroleum Inc. v. Southern Fuels Co., 813 F.2d 1327, 1330-31 (4th Cir. 1987).

Plaintiffs next contend that the instant litigation does not arise "by reason of this Deed of Trust . . . wherein proof of claim is by law required to be filed or in which it becomes necessary to defend or

_____

*Plaintiffs' other claims are also meritless. With respect to their promissory estoppel claim, we conclude that any reliance upon alleged oral statements made by the defendants was unreasonable as a matter of law. Plaintiffs were sophisticated in the ways of business, had legal representation, and most importantly the alleged statements were inconsistent with clear contractual language. See Howard Oaks, Inc. v. Maryland Nat. Bank, 810 F. Supp. 674, 677 (D. Md. 1993); see also Foremost Guar. Corp. v. Meritor Sav. Bank, 910 F.2d 118, 126 (4th Cir. 1990). And because the trustees' interpretation of the contract was the only reasonable construction possible, they cannot be held to have breached a fiduciary duty.

5

uphold the terms of this Deed of Trust." The Loan Modification Agreement, however, ratifies the terms of both the Note and the Deed of Trust. And in the Deed of Trust, plaintiffs agreed "[t]o pay all sums required to be paid pursuant to the Note . . . at the times and in the manner provided in said Note." Thus, a violation of the Note's pre-payment premium also constitutes a violation of the Deed of Trust. As a result, plaintiffs' argument fails.

Plaintiffs next contend that more than $11,000 should be subtracted from the fee award because such fees were incurred prior to the initiation of this lawsuit. We, however, find no such limitation in the Deed of Trust. Rather, the attorneys' fees provision provides that fees are recoverable if "incurred by reason of any action, suit, proceeding, hearing, motion or application before any Court . . . to which the [defendants] may be or become a party . . . and all money paid or expended . . . in that regard." This language is broad enough to encompass the $11,000 spent on such attorney activities as claim assessment and communication with opposing counsel a mere few months before plaintiffs formally filed suit.

Plaintiffs' next argument that the legal work performed by defendants Engel and Carter cannot be included in the fee award also falls short. Plaintiffs have provided neither legal authority nor any convincing rationale for why the time billed for work done by these two attorneys cannot be included in the fee award.

Plaintiffs finally contend that the documentation provided by the defendants to support their motion was insufficient. See Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974). We disagree. The submitted affidavit and records include such information as the number of hours each attorney worked and the specific tasks involved in defending against this suit. We cannot conclude that the district court erred by finding such documentation adequate.

IV.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

6